No. 82-349

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

LEO M. DOLL and LORRAINE DOLL,
husband and wife,

Plaintiffs and Respondents,

vs.

MAJOR MUFFLER CENTERS, INC. and
COLONIAL LEASING CO., OF NEW ENGLAND,
INC., a Massachusetts Corporation,
d/b/a COLONIAL-PACIFIC LEASING CO.,

Defendants and Appellants.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Robert Wilson, Judge presiding.

Counsel of Record:

For Appellants:

Nye Law Firm, Billings, Montana
Jerrold L. Nye argued, Billings, Montana
Towe, Ball, Enright & Mackey, Billings, Montana
Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
Montana

For Respondents:

Whalen & Whalen, Billings, Montana
Michael L. Whalen argued, Billings, Montana

Submitted: October 6, 1983

Decided: March 21, 1984

Filed: FEB-2 1984

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Leo M. Doll and Lorraine Doll (Dolls) brought this action in the Thirteenth Judicial District Court, Yellowstone County against Major Muffler Centers, Inc. (Major Muffler) seller of muffler pipe-bending equipment, and Colonial Pacific Leasing Co. (Colonial Pacific) which leased the equipment to the Dolls. The jury returned a verdict against Major Muffler for $30,000 actual damages, and $90,000 in punitive damages; and against Colonial Pacific for $10,000 actual damages and $40,000 punitive damages. We affirm as to Major Muffler, and reverse and modify in part as to Colonial Pacific.

In June, 1979, LeRoy Walth, sales representative for Major Muffler, called on Mr. Doll regarding a muffler pipe-bending machine which was used to bend pipes that are a part of motor vehicle exhaust systems. The sale involved in this case was the only sale made by Walth during the several months he was a salesman for Major Muffler. After negotiations, Walth presented and Mr. Doll signed several documents, including an authorized dealer form, a purchase order, a financing form, an insurance letter and an incomplete Colonial Pacific lease form. Mr. Doll issued a check for $1,980.

Mr. Doll testified that Walth represented that the pipe-bending machine was being sold to him and financed through Major Muffler, and that he did not discuss financing with Walth. Walth testified that it was necessary for Doll to secure outside financing because Doll did not believe he could finance the purchase of the equipment himself after his own bank declined to finance. The pipe-bending machine acquired by the Dolls was for use in the Dolls' business known as Auto and Truck Repair Service.

2

Colonial Pacific is a leasing company separate from and independent of Major Muffler. In 1979 Colonial Pacific did two to three percent of its business with Major Muffler. The forms signed by Mr. Doll and a cashier's check obtained with the Doll check were sent by Walth to Major Muffler, which forwarded the lease forms and its own check for $1,980 to Colonial Pacific. Colonial Pacific found the incomplete lease form unacceptable and prepared a completed lease form, which it mailed directly to the Dolls for signature. The Dolls signed these lease forms and returned the same to Colonial Pacific. The Dolls testified that they did not have any recollection of receiving a letter from Colonial Pacific with the lease, although Mr. Doll did recall receiving a lease form in the mail in July 1979. The Colonial Pacific cover letter, which was mailed to the Dolls with the lease form, explained that the proposed documents had been incomplete and unacceptable, and explained that Colonial Pacific was forwarding a new lease which the Dolls were to review, consider and, if acceptable, execute and return. The Dolls returned the executed lease papers to Colonial Pacific.

The Colonial Pacific lease signed by the Dolls does not grant to the Dolls an option or right to purchase the leased equipment at the conclusion of the lease term or at any other time. There is no reference in the lease form to a right to acquire ownership of the leased equipment on the part of the Dolls.

The pipe-bending machine was shipped by Major Muffler to the Dolls place of business, where a Major Muffler representative unpacked the machine and spent part of two days training the Dolls. Upon notification that the machine had been received by the Dolls, Colonial Pacific issued its

check to Major Muffler for the $13,980 purchase price of the machine.

Mr. Doll testified that he later complained to Major Muffler as to the unsatisfactory performance of the machine and that he had not been properly trained and asked Major Muffler to take the machine back.

Colonial Pacific telephoned Mr. Doll following nonpayment of the first lease payment. Mr. Doll complained about the machine to Colonial Pacific, and Colonial Pacific advised Mr. Doll they would contact Major Muffler and have Major Muffler get in touch with him. A Major Muffler representative did call Mr. Doll. Mr. Doll testified that the representative told him to make monthly payments or "I'd lose my house." Mr. Doll made 10 monthly lease payments and then refused to make further payment.

In September 1980, the Dolls sued for rescission of the lease, alleging collusion between the defendants. They prayed for actual and punitive damages. Colonial Pacific counterclaimed against the plaintiffs for their default under the lease, and summary judgment was entered in favor of Colonial Pacific. The District Court subsequently set aside the summary judgment for Colonial Pacific.

The amended complaint sought rescission of the transaction (an element which was withdrawn at the conclusion of the trial); actual damages of $25,000 from each of the defendants because of alleged violations of the Montana Unfair Trade Practices and Consumer Protection Act, sections 30-14-101, MCA, et seq., as well as the Montana Retail Installment Sales Act, sections 31-1-201, MCA, et seq., punitive damages of $100,000 against each defendant; and $20,258.60 alleged to be the "hidden interest" in the lease exceeding the legal rate of interest.

4

The jury returned a verdict against Major Muffler for $30,000 in actual damages and $90,000 in punitive damages; and against Colonial Pacific for $10,000 in actual damages and $40,000 in punitive damages.

Major Muffler raised a number of issues in its appeal. The first hurdle is whether this Court has jurisdiction to hear the appeal by Major Muffler. On this issue, three members of the Court concluded that the notice was insufficient to vest jurisdiction in this Court; three concluded that the notice was sufficient to vest jurisdiction; and one justice abstained.

We disagree with the conclusion of the dissenting justices that the one vote to abstain can be transformed by implication into a vote for jurisdiction. Therefore, the Court is equally divided as to whether we have jurisdiction to consider the appeal.

This Court previously has concluded that where the judges are equally divided, the judgment appealed from stands affirmed. The rule was stated in State v. Lensman (1939), 108 Mont. 118, 125, 88 P.2d 63, 66:

> "It is generally held, in the absence of a statute with reference to appellate courts, where, after hearing, the judges of the appellate court are equally divided in opinion, that the judgment, order or decree appealed from stands affirmed. 5 C.J.S., Appeal and Error, § 1844(b), page 1314. This is a universal rule."

The same conclusion was reached in Sanders v. Sanders (1951), 124 Mont. 595, 605-06, 229 P.2d 164, 169 (C.J. Adair, dissenting).

In a similar manner, our statutes provide that the concurrence of a majority of the Court is necessary for the transaction of business. Section 3-2-211, MCA provides:

> "The concurrence of a majority of the justices of the supreme court is necessary for the issuance of

any writ or the transaction of any business except such as can be done at chambers."

In this instance, all seven justices participated, underscoring the need for concurrence of four justices.

In the absence of a determination by a majority of the Court that the notice of appeal is sufficient, this Court does not have jurisdiction to hear the appeal of Major Muffler. At that point the judgment against Major Muffler is affirmed by an equally divided Court without a consideration of the merits of the appeal. In their dissents, two additional justices have concluded that the judgment against Major Muffler should be affirmed. This suggests that a technical rule has not been applied to the disadvantage of Major Muffler by only three members of this Court.

The issues raised by the Dolls and Colonial Pacific are:

1. Was it error to submit to the jury the issue of a violation of the Montana Unfair Trade Practices and Consumer Protection Act (sections 30-14-101, MCA, et seq.)?

2. Was it error to submit to the jury the issue of a violation of the Montana Retail Installment Sales Act, (sections 31-1-201, MCA, et seq.)?

3. Did the court err in failing to limit the instructions regarding the agency of LeRoy Walth to defendant Major Muffler?

4. Was the award of actual damages against Colonial Pacific substantiated by the evidence?

5. Was the award of punitive damages against Colonial Pacific proper?

6. Did the court err in failing to grant summary judgment to Colonial Pacific against the Dolls on the counterclaim for the admitted default and breach of the lease by the Dolls?

7. May Colonial Pacific defend without showing it has a certificate of authority to do business in Montana?

I.

Was there a violation of the Montana Unfair Trade Practices and Consumer Protection Act? The persons covered by the Act are described in section 30-14-133(1), MCA:

> "Any person who purchases or leases goods or services primarily for <u>personal</u>, <u>family</u>, or <u>household</u> <u>purposes</u> and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103 may bring an individual but not a class action . . ." (emphasis added).

Plaintiff Leo Doll testified as follows:

> "Q. Now this machinery was for your business, Auto & Truck Repair Service, isn't that correct?
> A. Yes.
>
> . . .
>
> "Q. Did you purchase the machine as part of your business, I mean did you buy it for business purposes?
> A. Yes."

Colonial Pacific contends that because the Dolls did not acquire the machine for personal, family, or household purposes, they do not come under the Act, and in addition argue that the Dolls failed to prove any unfair or deceptive acts or practices.

The uncontradicted testimony establishes that the machine was purchased for use in the Dolls' business. Regardless of whether the transaction is classed as a lease or a purchase by the Dolls, it does not come within the statutory definition of a purchase or lease of goods primarily for personal, family or household purposes. The uncontradicted evidence as well as the very nature of the machine establishes that it was purchased or leased entirely for business purposes. We hold that the Dolls do not fall within the class of persons who may bring a private action under the Act. As to Colonial Pacific, it was error to

7

submit the issue of a violation of this Act to the jury. For a similar interpretation, see Riverside Nat. Bank v. Lewis (1980), 603 S.W.2d 169, 173.

The Dolls contend that Colonial Pacific failed to object sufficiently to Jury Instruction No. 21 pertaining to the Act. The record reveals that Colonial Pacific strenuously objected prior to trial and at the close of the evidence to consideration of the Act. In addition at the time of the settlement of the instruction, that continued objection by Colonial Pacific was made clear. Formal exceptions are unnecessary. Colonial Pacific adequately made known to the court its objections to consideration of the Act and met the requirements of Rule 46, M.R.Civ.P.

II.

Was it error to submit to the jury the question of Colonial Pacific's violation of the Montana Retail Installment Sales Act (Sales Act)?

The lease between the Dolls and Colonial Pacific is on a printed lease form prepared by Colonial Pacific. In the lease Colonial Pacific is named as lessor, the Dolls as lessee and the supplier of the equipment is described as Major Muffler. The lease provides for an initial lease term of five years and six months with 66 monthly lease payments in the amount of $310.22 each. The lease describes the pipe-bending machine. Colonial Pacific makes no express or implied warranties as to the equipment. Colonial Pacific authorizes the Dolls to enforce in their name all warranties made by the supplier (Major Muffler) to either the Dolls or Colonial Pacific. The lease also provides that no defect or unfitness of the equipment shall relieve the Dolls of the obligation to pay rent or any other obligation under the

8

lease. The lease requires the return of the equipment to Colonial Pacific at the termination of the lease, stating:

> "13. <u>Surrender</u>. Upon the expiration or earlier termination of this lease, Lessee, at its expense, <u>shall return the equipment</u> in good repair, ordinary wear and tear resulting from proper use thereof alone excepted by delivering it packed and ready for shipment to such place or carrier as Lessor may specify." (emphasis added)

There is no clause or provision in the lease which could be construed as granting an option to purchase or any other right on the part of the Dolls to acquire the machine by purchase or otherwise at the expiration of the lease term or at any other time.

It becomes essential to determine if the lease can be construed as a retail installment sales contract under the Sales Act. The Sales Act does provide that a lease can be classed as such a contract, describing the requirements in section 31-1-202(n), MCA:

> "'Retail installment contract' or 'contract' means an agreement evidencing a retail installment transaction . . . under which a buyer promises to pay in one or more deferred installments the time sale price of goods . . . The term includes . . . leasing of goods by which the . . . lessee contracts to pay as compensation for its use a sum substantially equivalent to or in excess of its value and by which it is agreed that the . . . <u>lessee is bound to become, or for no further or a merely nominal consideration has the option of becoming, the owner of the goods upon full compliance with the provisions of the contract."</u> (emphasis added).

Under this definition, a lease can be classified as a retail installment sales contract where the lessee may become the owner without payment of additional consideration or merely a nominal consideration. The lease form itself does not grant a right to the Dolls to become owners without payment of additional consideration or upon payment of a nominal consideration. In fact, it does not provide for their becoming the owners in any manner. No evidence was presented

showing that the Dolls had such a right to become the owners of the leased equipment.

We therefore hold that the District Court erred in submitting the issue of a violation of the Montana Retail Installment Sales Act and instructing on finance charges under the Act as to Colonial Pacific.

### III.

Was it error for the court to fail to limit the instructions regarding agency of LeRoy Walth to Major Muffler?

Colonial Pacific contends that the Dolls failed to prove by their own testimony that they believed or had reason to believe that Walth acted in behalf of Colonial Pacific and that it was error for the court to fail to limit its instructions on agency to Major Muffler alone.

The testimony of Mr. Doll establishes that he understood LeRoy Walth to be the representative of Major Muffler and did not understand him to be a representative of Colonial Pacific. Walth also testified that he was not acting in behalf of Colonial Pacific, was not paid by Colonial Pacific and was not instructed by Colonial Pacific. The Dolls attempted to establish an ostensible agency relationship because Mr. Walth had Colonial Pacific leasing forms. Ostensible agency is defined in section 28-10-103, MCA:

> "An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent who is not really employed by him."

The undisputed record shows that Mr. Doll did not believe that Walth represented Colonial Pacific but that Walth represented Major Muffler. The record does not show that Colonial Pacific caused the Dolls to believe Walth was its agent. The record does not show that Walth professed to

10

represent Colonial Pacific as an agent. The record does not show that Mr. Doll made any type of an assumption that Walth was an agent for Colonial Pacific.

An agency relationship is created only where a purported agent claims to be acting on behalf of a ratifying principal. State v. Sundling (1955), 128 Mont. 596, 606, 281 P.2d 499, 504. The record is devoid of any claim or understanding by either Walth or Doll that Walth was acting for Colonial Pacific.

Anything in the nature of ratification by Colonial Pacific is repudiated under the facts of the case. The original instruments submitted by Walth were found to be unacceptable. Colonial Pacific prepared entirely new documents and sent them directly to Mr. and Mrs. Doll for their consideration and execution. The Dolls then entered into the lease arrangement with Colonial Pacific.

We conclude that it was error for the District Court to fail to limit the instructions with regard to the agency of LeRoy Walth to the defendant Major Muffler.

IV.

Was the award of actual damages against Colonial Pacific supported by the evidence?

In the amended complaint, Dolls sought $25,000 damages from Colonial Pacific for violation of the consumer statutes, $100,000 for punitive damages and $20,258.60 for excess interest. The jury awarded $10,000 in actual damages and $40,000 in punitive damages against Colonial Pacific.

At trial Dolls proved they had paid $1,960 as a deposit on the pipe-bending machine and ten payments to Colonial Pacific totaling $3,102.20. The Dolls also paid freight of $290.68. There was general testimony that the pipe-bending machine interferred with the operation of the garage.

11

We have previously concluded that Colonial Pacific did not violate either the Consumer Protection Act or the Retail Installment Sales Act. In addition, the Dolls failed to establish a case of actual or ostensible agency. Mr. Doll did specifically testify that Colonial Pacific had not lied, misled or deceived him. He did not testify as to any threats made to him by Colonial Pacific. The Dolls of course had the burden of proving by competent evidence any and all damages which they had suffered as a proximate result of the actions of Colonial Pacific. See Smith v. Zepp (1977), 173 Mont. 358, 370, 567 P.2d 923, 930. We find no evidence to support an award of actual damages in favor of the Dolls against Colonial Pacific.

We therefore conclude that the Dolls failed to prove a theory of recovery against Colonial Pacific justifying the jury award of actual damages.

V.

Was the award of punitive damages against Colonial Pacific proper?

We have concluded that the Dolls failed to present evidence to support a theory on which actual damages could be awarded against Colonial Pacific. Without a finding of actual damages, whether or not determined in amount, exemplary damages are not proper. As stated in Lauman v. Lee (Mont. 1981), 626 P.2d 830, 833, 38 St.Rep. 499, 502:

> "The finding of actual damages is the primary requisite step toward any award of exemplary damages. Miller v. Fox (1977), 174 Mont. 504, 571 P.2d 804."

We hold that the award of punitive damages against Colonial Pacific was not proper.

VI.

Was it error to refuse summary judgment to Colonial Pacific on its counterclaim?

The uncontradicted evidence in behalf of Colonial Pacific established that the Dolls owed Colonial Pacific $17,372.32 for payments, $434.28 for late charges, $1,467.90 for the salvage value, and $599.78 for property taxes, so that after deducting the security deposit, Colonial Pacific claimed to be entitled to total damages in the amount of $18,579.50. The Dolls did not raise any affirmative defense to this counterclaim. The Dolls did testify that they had failed to make the payments since approximately August of 1980. At the close of the case and after submission of all evidence, Colonial Pacific moved for summary judgment on its counterclaim. The lower court took the matter under advisement and subsequently denied the motion.

Rule 56(a) to (g), M.R.Civ.P. sets forth the basic procedure upon motion for summary judgment. Such a motion is appropriate where 20 days has expired from the commencement of the action and the judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) M.R.Civ.P. In Krone v. McCann (Mont. 1982), 638 P.2d 397, 399, 39 St.Rep. 10, 13, we stated that a summary judgment is proper if there is no issue of material fact:

> "Under Rule 56(c), M.R.Civ.P., a summary judgment is proper only if the record discloses no genuine issue of material fact and that the movant is entitled to judgment as a matter of law [citations omitted]. The party moving for summary judgment has the burden of showing the complete absence of any genuine issue as to all facts which are deemed to be material in light of those substantive

13

> principles which entitle him to judgment as a
> matter of law. [citations omitted]."

Technically the proper procedure on the part of Colonial Pacific would have been to proceed under Rule 50(b), M.R.Civ.P., making a motion for a directed verdict at the close of all of the evidence. Had a motion for directed verdict been made, then the stated rule of law to be applied is described in Sistok v. Northwestern Tel. Systems, Inc. (Mont. 1980), 615 P.2d 176, 178, 37 St.Rep. 1247, 1249, quoting Lawlor v. Flathead County (1978), 177 Mont. 508, 582 P.2d 751, 754.

> "Upon a motion for a directed verdict by a party,
> the evidence introduced by his opponent will be
> considered in the light most favorable to opponent.
> Thereupon, the conclusion sought by the moving
> party must follow as a matter of law."

While it is true that the motion was for summary judgment rather than directed verdict, the grounds for the motion are clearly set forth in the record. All of the parties understood that the motion was being made based upon the uncontradicted evidence of the obligation owing by the Dolls to Colonial Pacific and following the withdrawal by the Dolls of the count on rescission in their amended complaint. Basically the questions to be answered are the same under either motion, that being whether the uncontradicted evidence establishes the obligation owing to Colonial Pacific and whether judgment should therefore be entered for Colonial Pacific as a matter of law. Under these circumstances, we will consider the motion as the equivalent to a motion for directed verdict.

We hold that Colonial Pacific is entitled to judgment on its counterclaim, and remand to the District Court for determination of the correct amount owed to Colonial Pacific.

VII.

Can Colonial Pacific defend this action without showing it has a certificate of authority to do business in Montana?

Our code section on transacting business without a certificate of authority has a specific provision allowing a corporation to defend an action. Section 35-1-1004, MCA in pertinent part states:

"(2) The failure of a foreign corporation to obtain a certificate of authority to transact business in this state . . . shall not prevent such corporation from defending any action, suit, or proceeding in any court of this state."

With regard to a counterclaim asserted by a nonresident corporate defendant, we stated in Wortman v. Griff (1982), 651 P.2d 998, 1000, 39 St.Rep. 1916, 1918:

"The issue of whether the District Court should have granted the nonresident corporate defendant's counterclaim for rescission is most easily resolved. Appellants claim that the corporation cannot assert its counterclaim for rescission against them . . . However, the corporation in this situation was not instituting a suit. They were merely defending the action brought against them by the plaintiffs, which they have a right to do under section 35-1-1004(2), MCA. The counterclaim is just one aspect of the defense which they are entitled to raise and can therefore be brought."

This holding is directly applicable to the present case. It is noted that the counterclaim on the part of Colonial Pacific against the Dolls is a compulsory counterclaim under the provisions of Rule 13(a), M.R.Civ.P.

We therefore affirm the holding of the District Court which allowed Colonial Pacific to present its counterclaim.

The judgment of the District Court against Major Muffler is affirmed. The judgment against Colonial Pacific is vacated. The District Court is directed to enter judgment for Colonial Pacific against the Dolls on its counterclaim in the amount determined by the District Court to be owing.

15

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices


Mr. Justice John C. Sheehy dissenting:

I dissent.  I would affirm in all respects.

_____
Justice

16

Mr. Justice L.C. Gulbrandson concurring in part and dissenting in part:

I concur with the holding of the majority opinion as to Colonial Pacific. I respectfully dissent regarding the affirmance of the judgment against Major Muffler. In my view, Major Muffler's notice of appeal was sufficient to vest jurisdiction in this Court, and because of the improper use of the Montana Unfair Trade Practices Act and the Montana Retail Installment Sales Act, I would remand for a new trial.

_____
Justice

Mr. Justice Frank B. Morrison, Jr. concurs as follows.

I believe that this Court has jurisdiction to hear the appeal against Major Muffler Centers, Inc. I would affirm the jury verdicts against both defendants.

The interesting aspect of this case is that the appellate issues concerning Major Muffler are not treated for the reason that the "majority" opinion finds Major Muffler's appeal to be defective and finds this Court has no jurisdiction. In fact, only three justices have so voted. Three justices have determined that this Court does have jurisdiction. One justice takes no position on jurisdiction but has stated that he would affirm the verdict against both defendants. By casting his vote with respect to the substantive questions he has impliedly voted for jurisdiction. We, therefore, have four votes cast on the merits of the Major Muffler appeal while there are only three votes determining that Major Muffler did not vest jurisdiction in this Court.

The position authored by Justice Weber is a minority position on jurisdiction. The three signatories have a right to maintain this position and not vote on the merits. However, this means there are two votes to affirm the verdict against Major Muffler and two votes to reverse. Since the law mandates an affirmance absent a majority to reverse, the verdict must be affirmed.

I would rather see all members vote on the merits rather than stand on their minority jurisdictional position. At least then the parties would feel the case was treated on the merits by the whole Court and the case would have some precedential value.

_____
Justice

18

Mr. Justice Daniel J. Shea concurring and dissenting:

I agree with the disposition of the case against Colonial Pacific, but I do not agree with the disposition of the case against Major Muffler. I believe that there is a 4-3 vote to hear Major Muffler's appeal, and I would, on that basis, grant a new trial to Major Muffler because of error in instructing the jury on the law.

The first issue is whether Major Muffler's appeal is properly before us. The opinion states that a 3-3 vote with one abstention means that the appeal is not properly before us, and therefore an affirmance of the judgment against Major Muffler is required. I do not agree with this analysis.

The abstention must be treated, for purposes of appeal, as an affirmative vote in favor of hearing Major Muffler's appeal on the merits. The abstention on the jurisdictional issue must be read in conjunction with the abstainer's vote on the judgments. That vote states: "I would affirm in all respects."

There is no ruling of the trial court that the notice of appeal was untimely, and properly so, for that is a question for this Court to decide. Therefore, when Justice Sheehy says that he would affirm as to both defendants, I read this as meaning he would affirm on the merits as to both defendants. There is nothing else to affirm.

To affirm on the merits as to Major Muffler, there must first be a vote that Major Muffler's appeal is properly before us. Accordingly, I believe there is a 4-3 vote in favor of hearing Major Muffler's appeal on the merits.

Daniel J. Shea
_____
Justice