No. 84-381

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

DAVID L. HUNTER, Commissioner,
Dept. of Labor and Industry,
State of Montana, et al.,

           Plaintiff and Respondent,

-vs-

THE CITY OF BOZEMAN, a Municipal
corporation; THE CITY OF BOZEMAN
STREET DEPARTMENT, et al.,

           Defendants and Appellants.

APPEAL FROM: District Court of the Eighteenth Judicial District,
           In and for The County of Gallatin,
           The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Landoe, Brown, Planalp, Kommers & Johnstone; J. Robert
        Planalp argued, Bozeman, Montana

    For Respondent:

        William P. Richardson argued, Labor Standards Div.,
        Helena, Montana

Submitted:    April 16, 1985

Decided:    May 30, 1985

Filed:  **MAY 30 1985**

*Ethel M. Harrison*

———————————————————
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This is an appeal from an award of $17,554.76, against the City of Bozeman for unpaid wages mandated by §§ 18-2-401, et seq., MCA.

David L. Hunter, Commissioner of Department of Labor, filed a complaint against the City of Bozeman on June 3, 1982, seeking the difference in those wages paid and those wages which should have been paid pursuant to Montana's Prevailing Wage Law, referred to as the Little Davis-Bacon Act. The City's motion to dismiss based on the unconstitutionality of this Act was denied. Following a non-jury trial, the Honorable Thomas A. Olson entered findings of fact and conclusions of law on November 21, 1983, awarding damages in the amount of $17,554.76, against the City.

During the summer of 1981, the City of Bozeman submitted specifications for the construction of a vehicle storage building on land owned by the City. Advertisement for bids on the project resulted in only one bid, which was rejected for being too costly. Thereafter, Pollard Finance, Inc., an Idaho corporation, approached the City of Bozeman proposing the lease of a building which Pollard would construct. On November 10, 1981, Pollard and the City of Bozeman entered into a lease for the proposed storage building.

Pollard negotiated a contract with W. R. Henderson for the construction of the building. All contractors and subcontractors were hired and paid by Henderson. The City of Bozeman was not a party to the construction contract. The lease agreement between Pollard and the City of Bozeman and the Pollard-Henderson construction contract were distinct and independent contracts. In sum, the City of Bozeman owned the

2

land upon which Henderson constructed the storage warehouse, which Pollard owned and leased back to the City.

The following issues are presented on appeal.

1. Is the Little Davis-Bacon Act, contained in §§ 18-2-401 through 18-2-405, MCA (1981), unconstitutional in that the method devised by the Montana Legislature to set the prevailing wage for public contracts constitutes an improper delegation of power to private groups?

2. Is there substantial credible evidence to support the finding of the trial court that the lease between the City of Bozeman and Pollard Finance, Inc., is a public works contract for the purposes of §§ 18-2-401 through 18-2-405, MCA (1981)?

3. Did the trial court err in allowing proof of wages from hearsay letters compiled by persons not called to testify in the case?

4. Did the trial court err in assessing penalties against the appellant?

Appellant contends that the prevailing wage rate scheme established by the Montana Legislature involves an unconstitutional delegation of authority from the Legislature to private parties. The crux of this argument is that, since the Little Davis-Bacon Act as it exists in Montana, mandates that the prevailing wage rate be determined by collective bargaining agreements, it is unconstitutional.

Reliance is placed upon § 18-2-401(5)(b), MCA, which provides:

> "(b) When work of a similar character is not being performed in the county or locality, the standard prevailing rate of wages, including fringe benefits for health and welfare and pension contributions and travel allowance provisions, shall be those rates established by collective bargaining agreements in effect in the county or locality for each craft, classification, or type of worker needed to complete the contract."

3

The section quoted above is not applicable to the facts at bar. This case is governed by § 18-2-401(5)(a), MCA, which provides:

"(5) (a) 'Standard prevailing rate of wages, including fringe benefits for health and welfare and pension contributions and travel allowance provisions applicable to the county or locality in which the work is being performed,' means those wages, including fringe benefits for health and welfare and pension contributions and travel allowance provisions, which are paid in the county or locality by other contractors for work of a similar character performed in that county or locality by each craft, classification, or type of worker needed to complete a contract under this part."

The following statute, § 18-2-402(1), MCA, provides guidelines for establishing the prevailing rate of wages. The section states:

"Standard prevailing rate of wages. (1) The Montana commissioner of labor may determine the standard prevailing rate of wages in the county or locality in which the contract is to be performed. The commissioner shall undertake to keep and maintain copies of collective bargaining agreements and other information from which rates and jurisdictional areas applicable to public works contracts under this part may be ascertained (emphasis supplied)."

Statutes which make the union scale absolutely determinative of prevailing wages have been held to be invalid. Bradley v. Casey (Ill. 1953), 114 N.E.2d 681; Wagner v. City of Milwaukee (Wisc. 1922), 188 NW 487; Industrial Commission v. C & D Pipeline, Inc. (Ariz.App. 1979), 607 P.2d 383.

On the other hand, a prevailing wage law with a union scale provision has been held constitutional where the union rate of wages merely assists in ascertaining the prevailing wages and the public authorities are vested with the ultimate determination as to what constitutes prevailing wages. Baughn v. Gorrell & Riley (Ky. 1949), 224 S.W.2d 436; Union School District of Keene v. Commissioner of Labor (N.H. 1961), 176 A.2d 332.

4

Montana's Little Davis-Bacon Act authorizes the Commissioner of Labor to establish standard prevailing rates using union contracts and "other information" as guidelines. Therefore, collective bargaining agreements are advisory, but not compulsory where there is other evidence of prevailing wage rates in the community as there was in the Bozeman area. No unconstitutional delegation of authority has occurred in § 18-2-401(5)(a), MCA. We do not reach a decision with respect to the constitutionality of (b) of the same statute, as it is not applicable to the facts at bar.

In its second issue, appellant attacks the trial court's finding that the lease was in fact a public works contract. This is a substantial credible evidence question. Robinson v. Schrade (Mont. 1985), ____ P.2d ____, ____, 42 St.Rep. 401, 403. We must view the evidence in a light most favorable to respondent, Mountain West Farm Bureau Mutual Ins. Co. v. Girton (Mont. 1985), ____ P.2d ____, ____, 42 St.Rep. 500, 501, and determine whether or not a factual issue was presented to the trial court.

At the end of twenty years, the City acquires absolute ownership of the "leased" building for $10 and retains ownership of the land. Pollard, at the end of the 20-year term, must transfer it to the City for $10. Furthermore, the penalty provision for nonrenewal of the lease is highly suggestive of a sale to the City. Provision 23 of the lease contains a provision for liquidated damages in the event that the City failed to exercise five-year renewal options running the full term of the lease to 20 years. That provision states:

> ". . . in the event the Tenant fails to renew the lease at the end of the original term of the lease or after the first and second renewal periods (five years each), the Tenant shall deposit with the escrow agent the sum of $175,000 cash as liquidated

damages for the failure of the Tenant to renew said
lease."

There is substantial credible evidence to support the
finding by the trial court that the "lease" was in fact a
sale of the building to the City and that this was in effect
a public works project.

Appellant claims error in the trial court's admission of
certain documentary evidence. Of the total $8,777.39 damage
award, only $1,365.27 was based upon oral testimony of wit-
nesses. The balance was proven by evidence admitted under
exceptions to the hearsay rule. The Commissioner introduced
unverified letters of Henderson Construction, Lipka Door
Company and McBride Construction pursuant to the "catch-all"
exception to the hearsay rule found in Rule 803(24),
M.R.Evid. These letters are not business records as they
were not kept in the ordinary course of business, but were
compiled for litigation purposes. Sufficient guarantees of
trustworthiness do not exist when documents are compiled for
litigation purposes.

Respondent argues that the three letters in question
were summaries of payroll records supplied by the appropriate
personnel in response to administrative subpoenas issued by
the Department of Labor. As such, it is contended the docu-
ments possess the "comparable guarantees of trustworthiness"
required by Rule 803(24), M.R.Evid., because a person re-
sponds truthfully and accurately to judicial requests knowing
that an untruthful response results in penalty imposed by the
court. This same argument could be made in support of other
forms of inadmissible hearsay. Cross-examination serves a
useful purpose in testing the credibility of evidence. It
should be sparingly denied.

We find as a matter of law that the letters here admitted were hearsay and should not have been received in evidence. A substantial part of the damage award was based upon this hearsay evidence and therefore the judgment must be vacated and the matter remanded for trial on the damage issue only.

Appellant asserts error in the trial court's assessment of a penalty. Section 39-3-206, MCA, provides that if an employer on a public works project is delinquent, his obligation to pay prevailing wages includes a civil penalty. Section 18-2-403, MCA, provides that if a provision for the payment of the prevailing wage rate is not included by the public contracting body in the contract with the contractor, then the obligation to pay the prevailing wage rate is on the public contracting agency and not on the private contractor. However, this statute is silent as to the shifting of civil penalties.

Penalties are imposed upon the culpable party as a deterrent to discourage repetition of unlawful practices. The purpose of Montana's Little Davis-Bacon Act is to protect laborers from wage cutting practices by public employers. Imposition of a penalty upon the culpable party who fails to compensate with a standard prevailing wage rate deters other public contracting agencies similarly situated from committing the same error. This tends to fortify the underlying policy intended by the enactment of the statute.

While § 18-2-403, MCA, is silent as to the shifting of penalties, we find that an interpretation of the statute allowing civil penalties against the contracting agency accords with the underlying purpose of the statute.

We vacate the judgment and remand for a new trial on the damage question only. In all other respects the rulings of the trial court are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8