No. 87-01

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

DEAN POLLARD and POLLARD FINANCE
CORPORATION,

                Plaintiffs and Appellants,

    -vs-

CITY OF BOZEMAN, GALLATIN COUNTY TAX
ASSESSOR'S OFFICE, THE COUNTY OF
GALLATIN, and DOES I through XX,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jerry R. Bechhold, Bozeman, Montana

    For Respondent:

        A. Michael Salvagni, County Attorney, Bozeman,
        Montana
        Landoe, Brown, Planalp, Kommers & Johnstone; Robert
        Planalp, Bozeman, Montana

---

Submitted on Briefs:  June 4, 1987

Decided:  August 20, 1987

Filed:  AUG 20 1987

*Ethel M. Harrison*

---
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff-Appellant Pollard Finance Corporation (Pollard) appeals an order of the District Court of the Eighteenth Judicial District, Gallatin County, granting defendant/respondent City of Bozeman's motion for summary judgment.

The City of Bozeman (City) entered an agreement with Pollard Finance in November 1981 for the construction and lease of a vehicle storage building on City-owned land. The agreement provided that in consideration for construction and use the City would pay Pollard rent in the amount of $2,888 per month for five years with options to renew the agreement for three additional five year periods. The agreement included an option to purchase throughout the term of the lease, with a provision that after 20 years of leasing the City could purchase the building for $10.00.

The City apparently occupied the building in March 1982. In 1984 Pollard received notice that taxes had been assessed against the building and were owing. Pollard responded by filing a complaint for declaratory relief, attorneys' fees and damages, asserting that the City had, by the terms of the lease agreement, purchased the building and that he was not responsible for taxes assessed against it. His argument before the District Court relied primarily on a citation of this Court's dicta in Hunter v. City of Bozeman (Mont. 1985), 700 P.2d 184, 42 St.Rep. 784 where, in referring to the same building at issue here, it was said:

> There is substantial credible evidence to support the finding by the trial court that the "lease" was in fact a sale of the building to the City and that this was in effect a public works project.

Id. at 187, 42 St.Rep. at 787.

Pollard did not respond to the City's argument, contained in its motion for summary judgment, that the lease clearly and unambiguously provided that Pollard was the owner of the building. The City also distinguished Hunter as addressing only the issue of prevailing wage rates, not ownership. The District Court agreed with the City's assertions and granted its motion for summary judgment.

Pollard raises seven issues on appeal, three of which we will not address because they were not discussed at the trial court level. State v. Armstrong (1977), 172 Mont. 296, 562 P.2d 1129.

The remaining four issues can be consolidated as follows:

1. Did the District Court err in finding that Pollard was the owner of the building under the terms of the lease for purposes of assessment of taxes?

2. Did the District Court properly award the City of Bozeman attorneys' fees?

The language of the lease central to the first issue reads:

WHEREAS, the Landlord [Pollard] has agreed to construct and own in its own name solely a vehicle storage building for the various utilities of the City of Bozeman, . . ..

NOW, THEREFORE, in mutual consideration of the covenants contained herein, it is hereby agreed as follows:

1. Description of Premises. Landlord leases to Tenant the structure to be construed [sic] and owned by the Landlord and more specifically described and set out in Exhibit "A" . . ... This structure, which shall be constructed by the Landlord, shall be located on real property owned by the Tenant . . .

. . .

> 21. _Option of Tenant to Purchase_. The Tenant shall have the option to purchase the leased premises at any time during the lease period or any renewals thereof. The purchase price shall be the total rent for one five-year period multiplied by four less all rent paid pursuant to this lease. If this lease is renewed for the third time, at the end of the twentieth year, the Tenant shall receive the building for the sum of $10.00 cash. The other consideration shall be the continuing of performance of this lease by the Tenant. The parties designate First Bank of Bozeman, Bozeman, Montana, as the escrow agent of this agreement. The Landlord shall deposit a copy of this lease together with a bill of sale and a quitclaim deed transferring the structure and improvements to the Tenant. The Landlord covenants not to allow any liens or encumbrances on the leased premises during the term of this agreement, and further covenants the transfer of the property to the Tenant shall be free and clear of all liens, encumbrances and restrictions of record.

Pollard argues on appeal that the arrangement agreed to in the lease in fact constituted a sale of the property. Proof of the sale is found, he argues, in the fact that Pollard granted the property to the City of Bozeman by quit claim deed deposited in the escrow account. Further proof is found, he asserts, from the dicta in _Hunter_, supra, stating that the lease was in fact a sale, and from other lease provisions, such as the liquidated damage clause.

The City responds asserting that the language of the contract was clear and unambiguous in establishing a landlord-tenant relationship and that there was no present intention to convey title, an essential factor distinguishing a sales contract from a lease with an option to purchase. The City also explains that a liquidated damage clause does not convert a lease agreement to a sales contract.

The City's assertions on appeal are based in large part on the reasoning and conclusions set out in the District Court's memorandum in support of its order granting summary judgment. The District Court considered the matter entirely one of contract interpretation, stating that the "crystal clear" language of the document indicated it was a lease with an option to buy. It distinguished Hunter, supra, as a Department of Labor case dealing with prevailing wage rates, and ruled that it was inapplicable. The liquidated damage provision, it explained, was common in lease agreements, not purchase contracts. Hence, the contract was a lease agreement, the District Court concluded, and Pollard, as landlord, was liable for taxes.

Although we agree with the District Court's conclusion that Pollard is liable for the tax, it is not necessary to conclude that the document at issue was a lease with an option to buy. The arrangement more nearly falls under the provisions regarding Retail Installment Sales Contracts.

An option to buy involves a contract wherein the owner agreed to give another the exclusive right to buy property at a fixed price within a specified time. Nielson v. Hendrickson (1922), 63 Mont. 518, 210 P. 905. The option is not a sale. It is not even an agreement for a sale. At best, it is but "a right of election in the party securing the same to exercise a privilege," and only when that privilege has been exercised by acceptance does it become a contract to sell. Ide v. Leiser (1890), 10 Mont. 5, 24 P. 695. In other words, a contract of sale and purchase imposes upon the vendee an obligation to buy. An option confers a privilege or right to elect to buy, but it does not impose any obligation to buy. Ide v. Leiser, 10 Mont. at 11, 24 P. at 695; Miller v. Meredith, et al. (1967), 149 Mont. 125, 423 P.2d 595.

The rule pertaining to construing whether a writing transferring an interest in real estate is a contract for sale or an option to purchase depends not only on particular words and phrases, but on the intention of the parties to be derived from the instrument itself by consideration of its parts, and when that is doubtful, from the circumstances attending it. State Commissioner of Transportation v. Bakers Basin Realty Co. (N.J. Super. 1975), 350 A.2d 236; DeFeyter v. Riley (Colo. App. 1979), 606 P.2d 453.

Central to our determination that the parties' agreement was not a lease with an option to purchase is the clause in the contract pertaining to liquidated damages.

> 23. <u>Liquidated Damages</u>. As an inducement to enter into this lease and to grant to Tenant the extensions and renewals of this lease, the Tenant agrees that in the event the Tenant fails to renew the lease at the end of the original terms of the lease or after the first and second renewal periods, the Tenant shall deposit with escrow agent the sum of $175,000.00 cash as liquidated damages for the failure of the Tenant to renew said lease.
>
> It is further agreed that in the event of default for failure to renew this lease, the Tenant shall deposit a quitclaim deed to the real property beneath and immediately surrounding the building together with reasonable access thereto. The Landlord shall be entitled to receive this quitclaim deed from the escrow agent upon termination of the Tenant's occupancy of the building after default.

Although liquidated damage clauses generally contribute to the conclusion that the agreement is a lease with an option contract, this applies only when the liquidated damage clause is construed as providing consideration for an option upon finding that the instrument did not affirmatively obligate the prospective purchaser to buy the property. <u>DeFeyter</u>, supra. The agreement between Pollard and the City

is significantly different. The language of the liquidated damage clause imposes an affirmative obligation on the City to continue "leasing" the building or to pay a substantial amount as well as to forfeit title to the property on which the building stands. The circumstances clearly indicate that the parties did not contemplate or anticipate liquidated damage as an alternative. Rather, the evidence indicates that the parties intended that the agreement embody a contract of sale. Under these facts, the presence of the liquidated damage clause does not convert the contract into a lease with an option. The City has no economically feasible "option" under the terms of the agreement.

Our determination that the contract was not a lease with an option to buy is consistent with our conclusion in Hunter v. City of Bozeman (Mont. 1985), 700 P.2d 184, 42 St.Rep. 784 and is also supported by our decision in Doll v. Major Muffler Centers, Inc. (Mont. 1984), 687 P.2d 48, 41 St.Rep. 429. In Doll, we stated that a lease can be classified as a retail installment contract where the terms of the contract provide that a lessee will become owner on payment of nominal consideration, citing § 31-1-202(1), MCA. That section provides:

> (n) "Retail installment contract" or "contract" means an agreement evidencing a retail installment transaction entered into in this state under which a buyer promises to pay in one or more deferred installments the time sale price of goods or services, or both. The term includes a chattel mortgage, conditional sales contract, and a contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation for its use a sum substantially equivalent to or in excess of its value and by which it is agreed that the bailee or lessee is bound to become, or for no further or merely nominal consideration has the option of becoming, the owner of the goods upon full compliance with the provisions of the contract.

We recognize that retail installment contracts usually relate to the sale of goods or services, and not to the sale or improvements to real estate, but the analogy holds in this case. Except for the object sold here, the definition of a retail installment contract fits this agreement.

The Pollard-City of Bozeman "lease" falls within the above definition, i.e., the lessee City has contracted to pay as compensation for the building a sum substantially equivalent to or in excess of its value, and the City will, after payment of nominal consideration, become owner of the building.

Note we find that the City will become owner, and not that the City is owner of the building. This is because title bestowing ownership has not transferred from Pollard to the City. Pollard deposited a copy of the lease, bill of sale and quitclaim deed in escrow with the intent that title to the building would pass from Pollard to the City only if the City met the conditions set out in the lease. The conditions precedent to conveyance of title have yet to occur. Delivery, one of the basic requirements for an effective conveyance, requires an intent of the parties to make the deed presently operable. Bull v. Fenich (Wash. App. 1983), 661 P.2d 1012. "A grant cannot be delivered to the grantee conditionally." Section 70-1-510, MCA.

Title bestowing ownership of the building has not transferred from Pollard to the City. Pending final payment, title remains with Pollard. The property is subject to tax under Pollard's ownership. Section 15-6-101(1), MCA. Therefore we conclude that Pollard was the owner of the building for purposes of assessment of taxes.

The second issue raised is whether the District Court properly awarded attorneys' fees to the City of Bozeman. We

- 8 -

find that it did under § 28-3-704, MCA, the reciprocal attorneys' fee statute, which states:

> 28-3-704. <u>Contractual right to attorney fees treated as reciprocal.</u> Whenever, by virtue of the provisions of any contract or obligation in the nature of a contract made and entered into at any time after July 1, 1971, one party to such contract or obligation has an express right to recover attorney fees from any other party to the contract or obligation in the event the party having that right shall bring an action upon the contract or obligation, then in any action on such contract or obligation all parties to the contract or obligation shall be deemed to have the same right to recover attorney fees and the prevailing party in any such action, whether by virtue of the express contractual right or by virtue of this section, shall be entitled to recover his reasonable attorney fees from the losing party or parties.

This statute is directly applicable to the provision on attorneys' fees in the contract between Pollard and the City. The contract provides:

> If the Landlord [Pollard] files an action to enforce any agreement contained in this lease, or for breach of any covenant or condition, Tenant [City] shall pay Landlord reasonable attorneys' fees for the services of Landlord's attorney in the action, all fees to be fixed by the Court.

By virtue of § 28-3-704, MCA, the contractual right to attorneys' fees contained in the agreement is reciprocal and thereby the City, as the prevailing party, is entitled to an award of the fees. Lyle v. Moore (1979), 183 Mont. 274, 599 P.2d 336.

Half-heartedly, Pollard has claimed in brief that § 28-3-704, MCA, is unconstitutional as adding provisions to the contract made between the parties. No citation of authority or further argument is advanced on the issue by Pollard. No response was made to this claim by the City.

The grounds stated are insufficient for us to examine or decide the purported constitutional issue.

Affirmed.

_John C. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_William E. Hunt_
_L. C. Gulbrandson_
Justices

Mr. Justice Fred J. Weber specially concurs as follows:

I concur with the majority decision to affirm the judgment of the District Court.

I do not join in the conclusion of the majority that the contract was not a lease with an option to buy but that the agreement constituted a contract of sale. I would affirm the District Court in its conclusion that the instrument constituted a lease with an option to buy.

I do not find it essential to determine whether the agreement was a lease with an option to buy or a contract of sale. The key fact is that title had not passed to the City and as a result the City had not become the owner. Because the title remained in Pollard, taxation to Pollard was the proper result.

                                        _____
                                                Justice