FILED

07/25/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0649

DA 16-0649

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 181

KEVIN DeTIENNE, individually and on behalf of
The VIBEKE DeTIENNE TRUST, AS TRUSTEE,
THE TRAIN STATION, LLC, a Montana Limited
Liability Company, and THE MONEY TRAIN,
LLC, a Montana Limited Liability Company,

        Plaintiffs and Appellees,

    v.

BRYAN SANDROCK, GG&ME, LLC, a Montana
Limited Liability Company, and DRAES, INC.,
a Montana Close Corporation,

        Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis And Clark, Cause No. CDV-2009-1105
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            John C. Doubek, Keif Storrar, Doubek, Pyfer & Fox LLP,
            Helena, Montana

            Perry J. Schneider, Milodragovich, Dale & Steinbrenner, P.C.,
            Missoula, Montana

        For Appellees:

            Stefan T. Wall, Wall, McLean & Gallagher, PLLC, Helena, Montana

                    Submitted on Briefs:  May 24, 2017
                            Decided:  July 25, 2017

Filed:

                      _____
                              Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     This case arises from a 2007 real estate transaction in Helena, Montana. The parties to this transaction have litigated the transaction and other related issues in multiple courts since 2008. In the case before us, Sandrock appeals the order of the First Judicial District Court, Lewis and Clark County, denying his motion to set aside a default and a subsequent default judgment entered against him. In his motions to set aside, Sandrock claims the default and default judgment were caused by his counsel's neglectful representation and the District Court abused its discretion in denying his motions to set aside the default. He also appeals the District Court's Judgment and Judicial Decree (Decree), asserting that the Decree is replete with errors, including the court's failure to provide a reasonable basis for its computation of damages. We affirm in part and remand in part.

## ISSUES

¶2     A restatement of the issues on appeal is:

¶3     Did the District Court slightly abused its discretion when it denied Sandrock's motion to set aside a default and a default judgment?

¶4     Did the District Court err in its calculation of damages?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     In January 2007, Kevin DeTienne and his mother, Vibeke DeTienne, established a limited liability company, The Train Station. The original Articles of Organization indicated Ms. DeTienne was the sole "member" of The Train Station. The DeTiennes

2

created The Train Station to purchase real property located at 1110 West Custer Avenue, Helena, Montana, on which to establish a casino that Kevin would operate through his company, The Money Train. When financing was delayed the DeTiennes approached Bryan Sandrock, a local business man and acquaintance of Kevin, for a short-term loan. As part of the agreement to provide funding, Sandrock requested and was granted 50% membership in The Train Station.[1] In September 2007, Ms. DeTienne created a Trust and transferred her membership in The Train Station to the Trust. Ms. DeTienne died in December 2007 and Kevin DeTienne became the Trustee of the Trust.

¶6 In February 2008, Kevin and two of his siblings initiated probate proceedings in the Fifteenth Judicial District Court, Sheridan County. *In the Matter of the Estate of Vibeke B. DeTienne*, DP-46-2008-0005076-FT (Feb. 27, 2008) (Cause No. 08-5076). Ultimately, Kevin was appointed personal representative of Ms. DeTienne's estate. In June 2008, Kevin DeTienne and Sandrock entered into a "substitution of member" agreement putting "Vibeke DeTienne Trust, Kevin DeTienne, Trustee, in the place and stead of Vibeke DeTienne, Member." Also, in June 2008, after the building on 1110 West Custer was completed, The Train Station entered into a lease agreement with The Money Train under which The Money Train was obligated to make monthly rental payments to The Train Station for the property.

---

[1] Kevin DeTienne alleges that at this time, Sandrock orally agreed that The Train Station would hold the lease for a casino he was developing, The Loose Caboose. Subsequently, no written agreement was executed and The Loose Caboose was not included as part of The Train Station.

3

¶7 Following a dispute with Sandrock, in August 2009, Kevin began depositing his monthly lease payment into the Trust bank account rather than to The Train Station bank account. In November 2009, Sandrock, through original counsel, initiated eviction proceedings against Kevin in the First Judicial District Court, Lewis and Clark County. *Sandrock v. DeTienne*, DV-25-2009-0001105-RP (Nov. 30, 2009) (Judge Kathy Seeley presiding) (Cause No. 09-1105). Sandrock claimed Kevin breached the lease agreement the parties had entered into by failing to pay rent.

¶8 In January 2010, Judge Seeley entered a temporary restraining order and later a preliminary injunction prohibiting DeTienne from entering the subject property pending a decision on the merits of the case. DeTienne appealed this ruling and, in November 2010, we affirmed and returned the matter to the District Court for a ruling on the merits. *Sandrock v. DeTienne*, 2010 MT 237, 358 Mont. 175, 243 P.3d 1123. This eviction proceeding lay dormant from November 2010—when this Court entered its Opinion— until May 2013, when Judge Seeley ordered a status report.

¶9 In February 2010, Sandrock, while asserting that he was the sole member and only interest holder in the assets of The Train Station, transferred the real property by deed to GG&ME, a Montana limited liability company of which he is the managing member. GG&ME then leased the property to Drae's Station Casino, a corporation formed on February 1, 2010, and whose sole shareholder is Deryl Rae Sandrock, Sandrock's spouse.

¶10 In March 2010, Kevin DeTienne initiated a declaratory judgment action against Sandrock, also in the First Judicial District Court, Lewis and Clark County. *DeTienne v.*

4

*Sandrock*, DV-25-2010-0000262-DK (Mar. 15, 2010) (Judge Jeffrey Sherlock presiding) (Cause No. 10-262). Kevin sought a declaratory judgment that his mother's Trust was a member of The Train Station and Sandrock's transfer of the property was unlawful as it was done without the consent of the other member, i.e. the Trust. In July 2010, DeTienne as Trustee of his mother's Trust moved for partial summary judgment. Sandrock opposed the motion. Judge Sherlock conducted a hearing on summary judgment in December 2010 and, in March 2011, the District Court ordered the case, including the pending motion for partial summary judgment, transferred to Sheridan County and consolidated with the probate proceeding, Cause No. 08-5076. Sandrock's original attorney represented him from the initiation of the declaratory judgment proceeding until the matter was transferred to Sheridan County.

¶11  As the eviction and the declaratory judgment cases were advancing, so was the 2008 Sheridan County probate action and, in January 2011, Sandrock, by original counsel, filed a claim against Ms. DeTienne's estate. In April 2012, after Sandrock's original attorney pursued other opportunities, Sandrock retained new counsel[2] to represent him in the Sheridan County proceeding. In November 2012, the Sheridan County District Court granted DeTienne's motion for partial summary judgment, issuing an express declaratory judgment that Ms. DeTienne's Trust was a member of The Train Station and had been since the June 2008 agreement between Kevin DeTienne and Sandrock. In December 2014, the Sheridan County District Court transferred the

_____

[2] This newly-retained attorney represented Sandrock in all three proceedings until June 2016 when Sandrock fired him and retained current counsel.

consolidated probate/declaratory action proceeding to Lewis and Clark County for consolidation with Cause No. 09-1105, the eviction proceeding.

¶12 In summary, Cause No. 08-5076 was the probate proceeding filed in Sheridan County by Kevin DeTienne and his siblings. Cause No. 09-1105 is the eviction proceeding Sandrock filed against DeTienne in Lewis and Clark County. Cause No. 10-262 was the declaratory judgment action filed in Lewis and Clark County by DeTienne against Sandrock. The declaratory judgment action was transferred to and consolidated with Sheridan County probate Cause No. 08-5076 in March 2011. In December 2014, the Sheridan County consolidated probate/declaratory judgment action was transferred to and consolidated with the Lewis and Clark County eviction proceeding, Cause No. 09-1105.

¶13 The appeal currently before us arose in the 2009 eviction proceeding, Cause No. 09-1105. Following the above-referenced hiatus from November 2010 until May 2013, the District Court ordered the parties to provide a status report. At that time, Sandrock's new counsel provided the status report on behalf of Sandrock. A scheduling order was issued in June 2013 and the parties began preparing for trial. In April 2014, DeTienne served discovery requests and admissions on Sandrock. Sandrock, through counsel, responded in May 2014. In September 2014, asserting that Sandrock's responses were "wholly inadequate," DeTienne moved for sanctions or, in the alternative, for a motion to compel. Sandrock opposed the motion.

¶14 In February 2015, while DeTienne's motion for sanctions was pending, DeTienne moved to realign the parties designating himself and The Train Station as plaintiffs and

6

Sandrock, GG&ME, and Drae's as defendants. Sandrock objected but on August 5, 2015, Judge Seeley granted the motion to realign and allowed DeTienne to file a second amended complaint. The court instructed Sandrock to respond to DeTienne's complaint within thirty days. Sandrock failed to answer the complaint within the designated time.

¶15 On September 11, 2015, at DeTienne's request, the clerk of the District Court entered Sandrock's default. DeTienne then requested a hearing to obtain a default judgment and to establish damages. The hearing was conducted on November 30, 2015. Minutes before the hearing was to commence, Sandrock, through counsel, filed a motion to set aside default judgment based upon an alleged fraud upon the court committed by DeTienne. Sandrock's counsel also submitted his proposed answer to DeTienne's complaint and admitted to the court that he had given the matter inadequate attention. As DeTienne's expert witness was present, the District Court allowed her to testify and informed the parties that a future damages hearing would be held in the event Sandrock's motion to set aside was denied. The witness, a certified public accountant with the WIPFLI accounting firm, testified that she had prepared, on behalf of DeTienne and The Money Train, a Lost Profits Analysis Report pertaining to The Train Station, The Money Train, and Sandrock's casino company, The Loose Caboose. The Report purportedly sets forth the money Kevin would have made for The Train Station and The Money Train had he not been wrongfully evicted in 2009. The WIPFLI Report was admitted into evidence at the hearing and became the foundation for the court's damages award.

¶16 Following the November 2015 hearing, the court instructed the parties to brief the issues raised in the motion to set aside default judgment. On March 1, 2016, after reviewing the parties' legal arguments, the District Court denied Sandrock's motion. The court held that under the "good cause" standard set forth in M. R. Civ. P. 55(c) (Rule 55(c)), counsel's claim that he had not paid sufficient attention to the matter failed to establish good cause to set aside the default. The court further held that Sandrock's brief did not support his argument of a "fraud" upon the court and that M. R. Civ. P. 60 (Rule 60), did not apply because a default *judgment* had not yet been entered against Sandrock.

¶17 In April 2016, the court conducted a damages hearing. In June 2016, Sandrock obtained current counsel, and again moved for relief from default judgment relying upon Rule 60(b)(1), (5) and (6)[3]. Sandrock claimed that the default judgment should be set aside based upon the gross negligence of his former attorney. Sandrock attached a lengthy affidavit to his motion and supporting brief setting forth allegations against his former attorney and against DeTienne. In addition, he challenged the computation and amount of damages that had been imposed.

---

[3] Rule 60(b) provides, in relevant part:
Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) mistake, inadvertence, surprise, or excusable neglect;
    . . .
    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
    (6) any other reason that justifies relief.

¶18 The District Court observed in its August 2016 order that Sandrock, with new counsel, was "attempting to rectify the consequences of what [he] perceive[s] to be negligence by [his] former counsel." The court denied the motion holding, as it had in its March 2016 order, that no default judgment had yet been entered in this case, therefore Rule 60(b) did not apply. In the same order, the court also struck Sandrock's affidavit interpreting the focus of the affidavit to be on aspects of "damages and the parties' working relationship." The court stated the affidavit was untimely based upon a prior order of the court precluding further evidence on damages. It also noted that the affidavit contained significant hearsay with no opportunity for cross-examination. While expressly mindful of Sandrock's new counsel and the problems with previous counsel, the court determined that, after seven years, it was "obligated to move [the] litigation toward a conclusion" and granting Sandrock's motion would "put the case in a procedural posture very near to where it began."

¶19 On September 28, 2016, the District Court issued its Judgment and Judicial Decree. The court ordered that: (1) Sandrock was disassociated and expelled from The Train Station; (2) the previous transfer of the property to GG&ME via quitclaim by Sandrock was "void and of no force and effect"; and (3) the leasehold to Drae's was void and the lessees had thirty days to vacate the premises. The court awarded compensatory damages to DeTienne in the amount of $2,083,171 plus specified interest, punitive damages of $150,000, as well as costs and attorney fees.

¶20 Sandrock, through counsel, promptly moved for relief from the judgment relying on Rule 60(b)(1) and (6). Sandrock's exclusive argument supporting setting aside the

9

default judgment was his previous counsel's gross negligence. Sandrock further conducted an analysis of the damages award, identifying specific errors in the calculation that he alleged render the damages award inaccurate and in need of recalculation and clarification. On December 6, 2016, DeTienne filed his opposition to Sandrock's motion for relief and reconsideration. DeTienne filed Notice of Entry of Judgment on December 14, 2016. The court did not respond to Sandrock's motion and after sixty days, it was deemed denied.

¶21 Sandrock appeals the District Court's denial of his motion to set aside default judgment and its calculation of damages. We affirm in part and remand in part.

## STANDARD OF REVIEW

¶22 We review a district court's denial of a motion to set aside a default or a default judgment for a slight abuse of discretion. This standard requires the reviewing court to weigh "the conflicting concerns of respecting the trial court's sound discretion while recognizing the policy favoring trial on the merits." *Lords v. Newman*, 212 Mont. 359, 364, 688 P.2d 290, 293 (1984). "It is clear that the issue of abuse of discretion must be decided on a case-by-case basis." *Lords*, 212 Mont. at 366, 688 P.2d at 294. *See also Paxson v. Rice*, 217 Mont. 521, 525, 706 P.2d 123, 125.

¶23 When reviewing an award of damages, the standard of review is whether the district court abused its discretion. *Czajkowski v. Meyers*, 2007 MT 292, ¶ 13, 339 Mont. 503, 172 P.3d 94. An abuse of discretion occurs when a district court acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason. *In re E.Z.C.*, 2013 MT 123, ¶ 19, 370 Mont. 116, 300 P.3d 1174.

10

¶24 A district court's determination of damages is a factual finding that must be upheld if it is supported by substantial evidence. We will not overturn a district court's award of damages unless it is clearly erroneous. A district court's factual findings are clearly erroneous if they are not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction that a mistake was made. When determining whether substantial evidence supports the district court's findings, we will review the evidence in the light most favorable to the prevailing party. *Vintage Constr., Inc. v. Feighner*, 2017 MT 109, ¶ 14, 387 Mont. 354, 394 P.3d 179.

## DISCUSSION

¶25 *Did the District Court slightly abuse its discretion when it denied Sandrock's motion to set aside a default and a default judgment?*

¶26 Sandrock asserts on appeal that the District Court abused its discretion in denying his motions to set aside the default and the subsequent default judgment as these motions illustrated his former counsel's total neglect of his duties and abandonment of his clients. Sandrock claims that the defaults were the result of the "utterly horrible and gross negligence" on the part of his then-attorney, and the District Court should have set the defaults aside based upon counsel's actions. He further contends that the District Court improperly struck his affidavit. However, as he fails to present a legal argument supporting his claim, we decline to address it. M. R. App. P. 12(1)(g). Consequently, we affirm the District Court's decision striking Sandrock's affidavit.

11

¶27 DeTienne counters that the District Court correctly reviewed, legally analyzed, and denied Sandrock's motions. DeTienne asserts that Sandrock's sole evidence supporting his arguments and claims against counsel were set forth in the affidavit that the District Court struck and did not enter into the record. DeTienne further claims Sandrock failed to sufficiently argue or demonstrate the presence of the necessary elements for overturning a default judgment.

¶28 As noted above, Sandrock, through counsel, filed three motions with the goal of having the default and default judgment against him set aside. As the third of these motions is most significant, we will not address the earlier motions in great detail. Motion 1 was filed by Sandrock's previous attorney, and Motion 2 was filed by current counsel seeking to recover some lost ground. We hold, however, that these previous motions were correctly denied as Motion 1 did not satisfy the standard for relief under the applicable rule for setting aside a *default*, Rule 55(c). Additionally, both motions sought relief under the rule for setting aside a *default judgment*, Rule 60(b), which was not applicable. As noted by the District Court in both orders, Rule 60 does not apply because no default judgment had been entered prior to the dates the motions were filed. We now address the District Court's deemed denial of Sandrock's Rule 60(b)(1) post-judgment motion for relief and reconsideration of the judgment.

¶29 As stated above, Rule 60(b)(1) provides that a court may set aside a default judgment if the defendant shows that the judgment resulted from "mistake, inadvertence, surprise, or excusable neglect." *See also* M. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule

12

60(b)."). When reviewing a district court's ruling on a motion to set aside a default judgment under Rule 60(b)(1), we apply a conjunctive four-part test: (1) did the defaulting party proceed with diligence; (2) was the defaulting party's neglect excusable; (3) did the defaulting party have a meritorious defense to the claim; and (4) if permitted to stand, would the judgment affect the defaulting party injuriously. *Mont. Prof'l Sports, LLC v. Nat'l Indoor Football League, LLC*, 2008 MT 98, ¶ 35, 342 Mont. 292, 180 P.3d 1142.

¶30 It is well-established that a judgment by default is not favored; rather, a trial on the merits is preferred. *Worstell v. Devine*, 135 Mont. 1, 4, 335 P.2d 305, 306 (1959). This is reflected in the applicable standard of review. We review a district court's ruling to *grant* a motion to set aside a default for *manifest* abuse of discretion. We review a district court's decision to *deny* a motion to set aside a default for a *slight* abuse of discretion. *Lords*, 212 Mont. at 364, 688 P.2d at 293.

¶31 It is undisputed that Sandrock's current counsel promptly moved for review and reconsideration of the judgment in this case arguing that the default judgment should be set aside. As a result, the first prong of the test is satisfied. We next consider whether Sandrock and his former attorney's neglect are excusable. We have decided numerous cases involving attorney neglect, default and default judgment, and whether counsel's neglect was excusable, and whether counsel's neglect should be attributed to his client. *See, e.g., First State Bank v. Larsen*, 72 Mont. 400, 233 P. 60 (1925); *Worstell; Lords; Graham v. Mack*, 216 Mont. 165, 699 P.2d 590 (1984); *Paxson; Twenty-Seventh Street*

13

*v. Johnson*, 220 Mont. 469, 716 P.2d 210 (1986); *In re Marriage of Castor*, 249 Mont. 495, 817 P.2d 665 (1991).

¶32 In *First State Bank*, the Bank appealed from a judgment against it and this Court reversed and remanded for a new trial. Neither Larsen nor his counsel appeared at the subsequent trial and the Bank obtained a default judgment. In seeking to have the judgment set aside, Larsen accused his attorney of neglect through failure to adequately and appropriately communicate with him. While noting counsel's failures, the Court also noted the multiple actions in the case taken by Larsen that constituted neglect. The Court stated, "[t]he neglect of an attorney is attributable to, and is the neglect of, his client, and the client can only be relieved from the consequence of the attorney's neglect on a showing which would excuse the client under like circumstances." *First State Bank*, 72 Mont. at 405, 233 P. at 962. After noting the client's negligence, the Court attributed the lawyer's neglect to his client and held the district court did not abuse its discretion in denying the motion to set aside the judgment.

¶33 In *Worstell*, the Worstells sued Devine in a contract dispute. Devine was served with the complaint on May 17, 1956, but did not deliver it to her attorney until May 21, 1956. Counsel was traveling at the time the complaint was delivered to his office and upon his return—believing his client was served on May 21—failed to notice the actual date of service. As a result, he miscalculated the date the answer was due, failed to file a timely answer, and a default and default judgment was entered against Devine. *Worstell*, 135 Mont. at 2-3, 335 P.2d at 305-06. Counsel responded to the default judgment with a prompt motion to set aside, an affidavit explaining the circumstances, and the proposed

14

answer and counterclaim. The district court denied the motion to set aside the default judgment. Devine appealed. *Worstell*, 135 Mont. at 3, 335 P.2d at 306. Relying on an early version of Rule 60(b)(1) and stating it "has been hesitant to impute the neglect of an attorney to his client," the Court held that counsel's neglect was excusable and appeared to be "an honest mistake." *Worstell*, 135 Mont. at 5-6, 335 P.2d at 307. The Court found significant Devine's counsel's prompt and diligent action in moving to set aside the judgment and his showing of a meritorious defense. *Worstell*, 135 Mont. at 6, 335 P.2d at 307.

¶34    In *Lords*, the Court again vacated a default and default judgment and remanded the case to the district court for further proceedings. *Lords*, 212 Mont. at 369, 688 P.2d at 296. In that case, a father, mother, and daughter were named in a legal proceeding. Only Father received service. When Daughter learned that Father had been served, she took the complaint to an attorney she had previously consulted on an unrelated matter. *Lords*, 212 Mont. at 361, 688 P.2d at 291. She asked counsel to assist her Father in the matter. Without further consultation, the attorney appeared in court, claiming to represent all three parties. He moved to dismiss the case or change the venue. Unbeknownst to the defendants, within days, the attorney ceased practicing law and moved out of state leaving no forwarding address. The District Court granted the change of venue but neither the court nor the plaintiffs could locate defendants' counsel. Shortly thereafter, default was entered against all three defendants. *Lords*, 212 Mont. at 361, 688 P.2d at 292. Defendants learned through their insurance provider—several months after the fact—that the attorney had entered an appearance on their behalf and that a default had

15

been entered against them. *Lords*, 212 Mont. at 362, 688 P.2d at 292. The Court observed:

> [Counsel's] actions do not constitute mere bungling of his duties or ineffective representation. [Counsel] totally abandoned his clients and disappeared from sight. To add insult to injury, before disappearing, [counsel] made a general appearance on behalf of the clients who had neither been served with process nor authorized him to so act.

The Court found counsel's behavior unconscionable and good cause for setting aside the default. *Lords*, 212 Mont. at 367-68, 688 P.2d at 295.

¶35 Sandrock relies heavily on *Lords*, arguing that his former counsel abandoned him as well. He asserts six "major failures" on the part of his former counsel, including that he: (1) was "essentially absent or ignored the proceedings" in the Sheridan County District Court probate matter, Cause No. 08-5076, causing Sandrock to be sanctioned for failing to respond to discovery orders; (2) provided inadequate responses to discovery motions and failed to adequately participate in litigation of the case before us on appeal, Cause No. 09-1105; (3) disregarded the District Court's order and failed to answer DeTienne's Second Amended Complaint in Cause No. 09-1105; (4) failed to promptly move to set aside the default resulting from failure to answer DeTienne's Second Amended Complaint; (5) ignored Sandrock's demands; and (6) failed to prepare for the damages hearing in Cause No. 09-1105.

¶36 The record does not support a finding that counsel abandoned Sandrock in the Sheridan County probate proceeding. While counsel's representation could be viewed as inadequate and ineffective, it is a far cry from the unauthorized representation followed by total abandonment experienced in *Lords*. As noted above, the record reveals that

16

counsel began representing Sandrock in the 2008 Sheridan County probate/declaratory judgment action, Cause No. 08-5076, in April 2012. Just weeks after taking the case over from previous counsel, counsel filed a timely five-page legal response—with appropriate and numerous attachments—to DeTienne's motion for partial summary judgment. He subsequently participated in the hearing on summary judgment, and requested an extension to respond to DeTienne's motion for discovery sanctions. He filed a response within the time granted by the District Court. He further moved for a hearing on the request for sanctions and filed a notice indicating discovery delivery was substantially complete with additional material to be submitted "expeditiously." Subsequently, he filed an answer brief in response to various motions filed by DeTienne just days before the matter was transferred to Lewis and Clark County for consolidation with Cause No. 09-1105. For these reasons, we cannot find, under *Lords*, that his representation constituted a total abandonment of Sandrock in the Sheridan County proceeding.

¶37   Sandrock further asserts claims of his former counsel's inadequate participation and preparation in the 2009 eviction proceeding, Cause No. 09-1105. However, the record reveals that counsel actively represented Sandrock in the eviction proceeding from May 2013 until May 2016. While counsel failed to submit a timely answer to DeTienne's complaint and to promptly move to have the default set aside, these actions do not constitute excusable neglect.

¶38   As we noted in *Paxson*, procrastination by counsel resulting in untimely responses "is a type of neglect which is properly attributable to a client." *Paxson*, 217 Mont. at 525, 706 P.2d at 126. In *Paxson*, the Paxsons sued contractor Rice for breach of contract,

17

breach of the implied warranty of habitability, negligent construction, and bad faith. Rice's attorney filed a motion to dismiss the complaint that was subsequently denied. Despite repeated efforts by Paxsons' counsel to prompt opposing counsel to file an answer to the complaint, Rice failed to file an answer. A default was issued and eight days later, Rice's counsel moved to have the default set aside. He asserted that he was leaving his law firm during this time and his inattention was excusable neglect and a mistake. *Paxson*, 217 Mont. at 523, 706 P.2d at 124. The district court disagreed and we held the court did not abuse its discretion in ruling that counsel's actions did not constitute "excusable neglect." *Paxson*, 217 Mont. at 526, 706 P.2d at 126.

¶39    Similarly, in *Marriage of Castor*, neither Castor, nor his counsel, appeared at a hearing requested by Castor seeking modification of his spousal maintenance payments to his ex-wife. While counsel received written notice of a continuation of the hearing, he failed to note the rescheduled hearing date; consequently, neither he nor his client attended. *Castor*, 249 Mont. at 498, 817 P.2d at 666. In arguing that the default should be set aside under Rule 60(b)(1) or (6), counsel claimed it was a "human" mistake and excusable. *Castor*, 249 Mont. at 499, 817 P.2d at 667. Relying in part on *Paxson*, this Court held the district court did not abuse its discretion in refusing to set aside the default. *Castor*, 249 Mont. at 500, 817 P.2d at 668.

¶40    We acknowledge that Sandrock's former counsel admitted inattentiveness to the case. It also appears he did not respond to his client's demands as readily as Sandrock desired. However, this does not constitute excusable neglect nor does counsel's inadequate preparation for a specific hearing. As Sandrock failed to establish that his

former counsel's neglect was excusable, we need not address the remaining two prongs of the test used to evaluate whether default judgment should be set aside.

¶41 Sandrock further asserts that he is entitled to relief under Rule 60(b)(6) as "the twisted set of facts in this case meets the 'extraordinary' circumstances standard" set forth in Rule 60(b)(6). We have frequently held that relief under Rule 60(b)(6) is appropriate only upon a showing that subsections (1) through (5) of Rule 60(b) do not apply. "It is generally held that if a party seeks relief under any other subsection of Rule 60(b), it cannot also claim relief under 60(b)(6)." *Koch v. Billings Sch. Dist. No. 2*, 253 Mont. 261, 265, 833 P.2d 181, 183 (1992). Here, Sandrock is erroneously attempting to obtain relief under both subsections (1) and (6). Relief under Rule 60(b)(6) is not and was not available to him.

¶42 For these reasons, we hold the District Court did not slightly abuse its discretion in denying Sandrock's motion for relief and reconsideration of the judgment and judicial decree or any previous motions to set aside default.

¶43 *Did the District Court err in its calculation of damages?*

¶44 Sandrock argues that "the District Court abused its discretion in multiple ways by erroneously including damages that should never have been awarded to DeTienne and by failing to account for and offset certain damages against the total judgment."

¶45 On April 13, 2016, the District Court conducted a hearing on damages at which both DeTienne and Sandrock testified. At the close of the hearing, Sandrock requested the opportunity to file a brief addressing legal issues associated with damages. The District Court granted Sandrock two weeks to file a brief but cautioned Sandrock that his

19

brief was not to include new evidence on amounts and figures of damages. Sandrock's subsequent brief addressed concerns of double recovery, as well as speculative and punitive damages. DeTienne filed a timely response to Sandrock's brief requesting approximately $3.5 million in compensatory damages and $1,000,000 in punitive damages.

¶46 Relying in part on the WIPFLI Report, the District Court found that The Train Station lost profits in the amount to $1,673,926, and Kevin's operating company, The Money Train, lost profits in the amount of $529,245. The District Court reduced the total lost profits by the $120,000 Sandrock had initially loaned to the DeTiennes, and awarded compensatory damages for economic loss in the amount of $2,083,171. Analyzing DeTienne's claim for punitive damages, the court greatly reduced the amount requested and awarded DeTienne $150,000 in punitive damages. The District Court further evaluated DeTienne's request for damages for conversion of personal property and lost rental income from The Loose Caboose, an entity owned by Sandrock, but denied these claims.

¶47 Sandrock argues on appeal that the District Court, in relying on the WIPFLI Report, erroneously included an award to DeTienne for Loose Caboose income and that the calculation of lost profits for The Train Station must be recalculated to remove projected income from The Loose Caboose. Sandrock further asserts the District Court's calculation of lost income must be reduced by $3,140 for the erroneous inclusion of a 5% service charge. Sandrock claims the District Court failed to account in its damages award for the Valley Bank loan to The Train Station in the amount $629,076 for which

Sandrock and The Trust are liable. Despite having been disassociated from The Train Station by court order, Sandrock maintains he is still responsible for the monthly payments on that loan. Additionally, Sandrock contends (1) prejudgment interest should not have been awarded; (2) The Money Train damages were speculative and based upon conjecture; (3) there was no evidence to support an award of punitive damages; and (4) attorney fees were improperly awarded.

¶48 While DeTienne puts forth an argument that the damages were correctly calculated and awarded, we remand the case to the District Court for an order setting forth its calculation and determination of damages. The court references various sources from which it derived amounts utilized in its damages award but we are unable to discern how the District Court used these amounts to establish the amount of damages awarded. Moreover, the District Court must assess the claims of error put forth by Sandrock to determine their validity. The District Court may conduct another damages hearing, if necessary, or it may recalculate and clarify its determination of damages using the current evidence admitted into the record.

## CONCLUSION

¶49 For the foregoing reasons, we affirm the District Court's denial of Sandrock's motion to set aside default and default judgment. We remand the matter to the District Court for a recalculation of damages and identification of the evidence supporting the recalculation, or clarification and identification of supporting evidence of the District Court's calculation of damages included in the Judgment and Judicial Decree.

21

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE