Justice Ingrid Gustafson delivered the Opinion of the Court.
***407 ¶ 1 Anthony Raelund, Candice Raelund, Raelund Family Trust, (collectively "the Raelunds") and Brooke Anthony Weeks (Weeks) appeal from an order of the Eleventh Judicial District Court, Flathead County, denying two motions filed by the Raelunds: Motion to Set Aside Default and Motion to Set Aside Default Judgment, and two motions filed by Weeks: Motion for Leave to Intervene by Brooke Anthony Weeks and Motion for Brooke Weeks to Join Anthony Raelunds [sic] Motion to Set [sic] Default and Judgment. We affirm.
¶ 2 We restate the issues on appeal as follows:
***408 1. Did the District Court slightly abuse its discretion when it denied the Raelunds' motions to set aside default and default judgment?
2. Did the District Court err when it denied Weeks' motion for leave to intervene?
3. Did the District Court err in its determination of damages?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 Lyn C. Rehm (Rehm), her son Erick M. Enz (Erick), and Erick's wife Keelee M. Enz (Keelee) (collectively "the Enzes") own a residential property in Kila which they decided to sell. On November 7, 2014, they entered into a "Lease Option Agreement" (Lease) with the Raelunds. "Anthony Raelud [sic] of the Raelund Family Trust" and "Candice Raelund of The Raelund Family Trust" signed the Lease.
¶ 4 Erick handled the negotiation and administration of the Lease. As Erick later testified, and the District Court found credible, he met with an "older" couple who introduced themselves as Anthony and Candy Raelund. Anthony introduced a younger man as his son Anthony Raelund, Jr. Erick and Keelee witnessed the older man sign the Lease as "Anthony Raelund." Erick did not witness anyone sign for Candice Raelund; rather, the document was later returned signed.
¶ 5 The Lease provided that upon signing, the Raelunds would pay $5,000, which Erick would deem as $850 in rent and $4,150 as a down payment toward the future purchase of the property. The Raelunds would thenceforth pay $2,500 per month; Erick would deem $1,500 as rent and credit $1,000 toward future purchase. Once the Raelunds made down payments totaling $30,000, they would have 60 days to submit $239,900 "paid in cash, certified check, or cashier's check at *677 closing" to purchase the property. Somewhat inconsistently, the Lease also provided that after the Raelunds made a total of $30,000 in down payment, Erick would deliver a quit claim deed and the Raelunds would assume the existing mortgages. The Lease also provided that if the Raelunds defaulted, the Enzes would keep all monies paid as liquidated damages.
¶ 6 Upon signing the Lease, the Raelunds presented Erick with $3,500, rather than $5,000 as agreed upon. Erick accepted the payment, considering $850 as prorated rent for November, and crediting the Raelunds with $2,650 towards the down payment.
¶ 7 From then forward, per the Lease, the Raelunds were expected to pay $2,500 by the fifth day of each month. The Raelunds did not submit a payment by December 5, 2014. On December 8, 2014, they paid only $1,500, informing Erick they intended to pay the additional ***409 $1,000 in one year. From January 2015 through July 2016, the Raelunds paid $2,500 each month, albeit sometimes late and sometimes in two installments. When Erick did not timely receive the August 2016 payment, he sent the Raelunds a "Notice to Pay or Quit" on August 18, 2016, which stated they were required to make the August payment, in full, within three days. The Notice provided that if the Raelunds failed to do so, the Lease would terminate and they would have to vacate the property immediately.
¶ 8 Erick testified that he gave the Raelunds "the benefit of the doubt" when they began making late payments. When he contacted the woman he knew as Candice Raelund to discuss the payment issues, she accused Erick of failing to disclose a mold problem in the bathroom. Erick offered to address the issue, but she informed him the Raelunds had fixed it. Candice Raelund also asked Erick for information about the property's mortgages. He initially answered her questions since she was a potential purchaser. However, he soon decided not to share more information because the Raelunds were only renting at that point.
¶ 9 The Kila property has two mortgages, both in Rehm's name with Nationstar as the lender. At around this time, Nationstar (Nationstar) contacted Erick and informed him Rehm had given permission for other people to access her mortgage account. Nationstar produced a written document purporting to authorize "Antonius Anthony Raelund and CC Raelund to be added to my account .... Please accept payments from either party." Rehm denied she had given such permission and she denied the signature on the document was hers.
¶ 10 On August 20, 2016, the Raelunds sent a payment for $1,123.30, in the form of a money order made out to both Erick and Nationstar Mortgage, via certified mail. On August 23, Erick served the Raelunds with a Notice of Eviction. The Raelunds continued to occupy the property and to send payments in lesser amounts, with money orders issued dual-payee to Erick and Nationstar, as follows: $1,132.00 on September 19; $1,173.30 on October 21; $1,132.00 on November 24; and $1,123.30 on December 14. Erick endorsed each money order and forwarded it to Nationstar.
¶ 11 After the December 2016 payment, the Raelunds ceased paying altogether. According to Erick's records, they had paid $22,650 towards the $30,000 down payment.
¶ 12 On January 4, 2017, the Enzes, appearing pro se, filed a Complaint in the Eleventh Judicial District Court in which they sought: a writ of possession; past due rent and pre- and post-judgment interest; actual damages for breach of contract; treble damages for refusal to pay rent pursuant to § 70-24-422(5), MCA ; quiet title; the ***410 right to retain all monies paid under the Lease; an order declaring that the Raelunds were not entitled to reimbursement for any alleged repairs, maintenance, or improvements; and attorney fees and costs.
¶ 13 On January 5, 2017, the Enzes received a "NOTICE and BILL" regarding the property. The document stated, in part:
Please produce the verifiable documents proving that ... you actually own this property.... As a mere tenant living on this property I will be happy to return it to its rightful owner, provided that the owner compensates me for my labor, time, efforts, payments, materials, and cash outlay for services rendered to improve and maintain *678 this property, to its maximum habitability, and safe to dwell within and upon. I shall now present this court and you and your company with an itemized invoice payable on demand.... If not paid by the specified time, I shall place a Mechanics lien and begin other collections actions as necessary to receive my just compensation.
The itemization of the alleged expenses included $12,000 for a foundation for a root cellar, $89,000 for mold abatement, $23,000 to renovate a bathroom, $75,000 to clear felled trees and remove the trunks, $9,600 for "House Cleaning Services," and $188,160 for "Total Maintenance at $10.00 per hour 24/7," for a grand total of $605,888. The document was signed "Anthony-B: Raelund a natural man."
¶ 14 The Enzes unsuccessfully attempted to have the Raelunds personally served with the Summons and Complaint. Process Server Lazzaro A. Cutrone filed Affidavits of Due Diligence, in which he averred he visited the Kila property on numerous occasions and although he saw signs of occupation, no one answered the door.
¶ 15 Cutrone also called several telephone numbers Erick provided. His calls usually went unanswered. On one occasion, a male answered and refused to identify himself, but stated he would give the Raelunds a message. On another occasion, a female who identified herself as "Bailey" answered, but claimed she did not know the Raelunds. On January 22, Cutrone reached a male who identified himself as "Dimitri" and who informed Cutrone the Raelunds were out of town but would meet with Cutrone on January 25. Neither "Dimitri" nor any of the Raelunds contacted Cutrone on January 25 and Cutrone was unable to make further contact with "Dimitri."
¶ 16 The Enzes then moved to serve the Raelunds by publication. The District Court granted the motion and the Enzes published the summonses in the Flathead Beacon three times in March 2017.
¶ 17 On April 17, 2017, with no response from the Raelunds, Erick filed a Notice of Intent to Request Entry of Default and Entry of Default ***411 Judgment against Anthony Raelund, Candice Raelund, and Raelund Family Trust. Erick posted a copy of this Notice at the Kila property.
¶ 18 On April 18, 2017, "Antonius Raelund" filed a Motion to Vacate Judgment for Fraud and Surprise,[1] with the parties captioned as:
"Antonius-Damascus; Raelund"Candi-Raelund CounterPLAINTIFF,v."Erick M.EnzKeelee M.Enz. andLyn C Rehm" CounterDEFENDANT
¶ 19 On April 21, 2017, the Enzes, now represented by counsel, filed a Motion for Entry of Default against Candice Raelund and Raelund Family Trust. The Enzes also moved the District Court to set a hearing on their Complaint, and to require "Antonius-Damascus; Raelund" to establish he is a real party in interest prior to the hearing.
¶ 20 On April 24, 2017, "Antonius-Damascus; Raelund" filed a "Notice of Pendancy [sic] of Action a.k.a Notice of Lis Pendens." He also filed a counterclaim.[2]
¶ 21 On April 25, 2017, the District Court granted the Enzes' motion to set a hearing, but denied their motion to require "Antonius-Damascus; Raelund" to establish he is a real party in interest prior to the hearing.
¶ 22 The hearing occurred on May 1, 2017. At the outset, the District Court asked if "Anthony Raelund" was present. A man responded in the affirmative and the court seated him at the counsel table. Upon questioning, the man further stated he was the person who had filed documents under the name "Antonius-Damascus; Raelund."
¶ 23 The District Court also asked if "Candace Raeland" was present.[3] A woman responded *679 in the affirmative. Another woman, who later identified herself as "Candy Raelund," interposed that "Candace Raeland" was not a defendant because "she didn't pay anything." The District Court asked "Candy Raelund" if she was "Candace Raeland." "Candy Raelund" denied being Candice Raelund. The woman who ***412 identified herself as "Candace Raeland" confirmed to the District Court she had not paid an appearance fee.
¶ 24 The District Court noted the Clerk of Court had already entered default against Candice Raelund and Raelund Family Trust and thus the only issue it was proceeding on was the question of possession involving Anthony Raelund. However, the court then began making inquiry of Candice Raelund:
THE COURT: ... Candace Raeland, are you requesting that the default entered against you be set aside?
"CANDACE RAELUND": I don't understand.
THE COURT: Well, you've filed a document in this case, have you not? Did you sign a document that was filed in this case?
"CANDY RAELUND": You don't understand.
"CANDACE RAELUND": I don't understand.
THE COURT: Okay. Do you not understand because you don't, or because the person sitting beside you is [telling] you to state you don't-
"CANDY RAELUND": Because she has a medical condition and she can't talk.
THE COURT: She just spoke, ma'am.
...
THE COURT: I have listened to Candace speak, and she's responded to several of my questions, and now you're telling me on her behalf that she has a medical condition that prevents her from speaking; is that correct?
"CANDY RAELUND": That's correct.
¶ 25 At that point, the District Court ordered "Candy Raelund" to leave the courtroom for obstructing the court, attempting to practice law without a license, and making false representations. Shortly thereafter, "Candice Raelund" informed the District Court she did not wish to participate in the proceedings and asked to leave. After attempting to ensure she understood the consequences of leaving, the District Court excused her from the hearing.
¶ 26 A notary public testified she had witnessed the signature of the man who had identified himself to the District Court as "Anthony Raelund." She produced her log book where he had printed his name as "Antonius Damascus Raelund" and signed "Anthony Damascus Raelund" underneath.
¶ 27 The Enzes moved for admission of the document from Nationstar purporting to add "Antonius Anthony Raelund" and "CC Raelund" to Rehm's mortgage account. "Antonius-Damascus; Raelund" objected, arguing the document was irrelevant because he had never gone by the ***413 name "Antonius Anthony Raelund" and had never signed a document "Anthony A. Raelund" or "Antonius A. Raelund." He further argued it was irrelevant to the present hearing because, "The subject matter today is to see if I'm a party of interest." The District Court responded, "No, it's not.... The topic for today, as I announced earlier in the hearing, is which parties are entitled to possession of the property."
¶ 28 Erick testified that the man he knew as "Anthony Raelund," and whom he witnessed sign the Lease, was not present. He recognized "Antonius-Damascus; Raelund" as having been introduced to him by "Anthony Raelund" as his son "Anthony Raelund, Jr." Erick further testified that he recognized the woman who identified herself to the court as "Candy Raelund" to be "Candice Raelund," the wife of the man who Erick believed to be "Anthony Raelund." He also recognized the woman who had identified herself to the court as "Candice Raelund," but he believed her name was not "Candice." The Enzes entered into evidence an article and accompanying photograph from the Flathead Beacon which identified the Raelund children as Antonius, Bailey, Cassidy, Colton, and Cricket. The woman who identified herself to the District Court as "Candice Raelund" was pictured in the photograph.
¶ 29 Erick's counsel then moved to strike the Motion to Vacate Judgment for Fraud *680 and Surprise filed by "Antonius Raelund," arguing that the man calling himself "Anthony Raelund" in the courtroom was not a real party in interest. The court asked "Antonius-Damascus; Raelund" if he had signed the Motion to Vacate Judgment for Fraud and Surprise and "Antonius-Damascus; Raelund" stated he had. The District Court asked "Antonius-Damascus; Raelund" if he was the person who signed the Lease, and "Antonius-Damascus; Raelund" stated he was. The District Court inquired further:
THE COURT: So Mr. Enz here has testified that it was your father that signed the lease agreement, are you saying that he's mistaken or wrong?
MR. "ANTONIUS-DAMASCUS: [sic] RAELUND": I don't remember my father signing that. And that's my stepfather, by the way.
...
THE COURT: What is his full name.
MR. "ANTONIUS-DAMASCUS: [sic] RAELUND": Brook Weeks.
...
THE COURT: Mr. Raeland, when do you say you signed it?
MR. "ANTONIUS-DAMASCUS: [sic] RAELUND": That's why I went out to Montana, to sign the contract and look at the property.
***414 THE COURT: Mr. Raeland, when is it that you say you signed the document?
MR. "ANTONIUS-DAMASCUS: [sic] RAELUND": I don't remember.
THE COURT: Do you have any recollection at all of signing it?
MR. "ANTONIUS-DAMASCUS: [sic] RAELUND": I remember looking at the contract, and it's my signature on it.
¶ 30 The District Court further questioned "Antonius-Damascus; Raelund" as to why his purported signature on the Lease looked vastly different from his signature in the notary logbook. "Antonius-Damascus; Raelund" offered no explanation. "Antonius-Damascus; Raelund" then claimed he could not specifically recall signing the Lease because he has a poor memory and a "very busy life."
¶ 31 After hearing further testimony, the District Court again inquired of "Antonius-Damascus; Raelund":
THE COURT: All right. Exhibit 5, Mr. Raeland, I'm told is the Lease Option Agreement, are you saying that you signed this?
MR. "ANTONIUS-DAMASCUS: [sic] RAELUND": I believe so, Your Honor.
THE COURT: That's not an answer. Did you sign it or not?
MR. "ANTONIUS-DAMASCUS: [sic] RAELUND": I cannot remember.
THE COURT: I see. I find that you are lying to me, Mr. Raeland. I find that this entire appearance today is nothing more than a scheme that's perpetrated by either your mother, or your stepfather, or both, that you are not Anthony Raeland. I find the testimony of [Erick] to be convincing, and I find as a matter of fact that you are not the party to this lease agreement ....
...
Further, I find that you are not the real party in interest, you did not sign the Lease Option Agreement in Exhibit 5, you have no standing to protest against the default that was taken against the person who signed the Lease Option Agreement who is the real party at interest. The Motion to Strike is granted ....
¶ 32 The District Court also asked "Antonius-Damascus; Raelund" to identify the two women who had been present at the beginning of the hearing. He identified the woman who had represented herself to be "Candice Raelund" as his sister Cassidy Candace Raelund, known to others as either Cassidy or Cass and currently 18 years old, and the other woman as his mother Candy Raelund. "Antonius-Damascus; Raelund" acknowledged that Cassidy would have been approximately 16 years of age when the Lease was signed. He maintained he did not ***415 know who signed the Lease as "Candice Raelund," and he believed there were initially only three signatories to the Lease and "she got put on later." He then testified that to the best of his knowledge, his sister Cassidy, and not his mother Candy, signed the Lease as "Candice Raelund." *681 ¶ 33 Upon the Enzes' motion, the District Court entered default against Anthony Raelund and default judgment against Anthony Raelund, Candice Raelund, and Raelund Family Trust. The court commented that while it believed "Antonius-Damascus; Raelund" may sometimes call himself "Anthony Raelund," he was not the "Anthony Raelund" who entered into the Lease. Since that Anthony Raelund had failed to appear, his default was entered.
¶ 34 The District Court further ruled the Raelunds' failure to pay and breach of the Lease was willful. The District Court explained:
With respect to the lien and the request to quiet title, at the outset of the hearing I announced in open court that the issue that would concern the Court at today's hearing would be who is entitled to possession, and this was before the Court became aware of the depth and scope of the fraud that you, Mr. Raeland, were attempting to perpetrate upon this Court. And I find that the lien that was filed, having listened to the testimony of [the notary public], that it was you in fact who signed that lien document, and you have no standing under the contract to file for that lien, you are not in a position to enforce any sort of supposed real estate improvement contract, and therefore I find that the lien was fraudulent at its inception and is void from its creation, and so I'm going to grant that relief.
¶ 35 The District Court offered "Antonius-Damascus; Raelund" an opportunity to be heard. He declined. The District Court issued a writ of possession in favor of the Enzes.
¶ 36 On May 3, 2017, the District Court entered its default judgment against Anthony Raelund, Candice Raelund, and Raelund Family Trust, followed by a Default Judgment Nunc Pro Tunc on May 8, 2017, to correct clerical errors. The damages awarded to the Enzes included the balance of the rent due since August 2016, including prejudgment interest; treble damages pursuant to § 70-24-429, MCA ; post-judgment interest; and attorney fees and costs pursuant to § 70-24-442, MCA.
¶ 37 On June 2, 2017, the Raelunds, now represented by counsel, moved to set aside the default and default judgment, arguing that "Antonius-Damascus; Raelund," who appeared at the May 1, 2017 hearing, was "Anthony Raelund," a party in interest in this matter. The Raelunds further alleged: a man named "Brooke Anthony Weeks"
***416 was the father of Antonius-Damascus; Raelund, a/k/a Anthony Raelund; Weeks signed the Lease; and Weeks did so on behalf of his son Anthony Raelund. The Raelunds alleged the Enzes knew Weeks was signing on behalf of Antonius-Damascus; Raelund, a/k/a Anthony Raelund when he signed the Lease. The Raelunds argued the District Court should set aside the default because Weeks' signing on behalf of Antonius-Damascus; Raelund, a/k/a Anthony Raelund was "newly discovered evidence." The Raelunds argued that if the District Court did not find Antonius-Damascus; Raelund, a/k/a Anthony Raelund to be a real party in interest, it should allow Weeks to intervene as a party in interest.
¶ 38 On June 19, 2017, Weeks moved to intervene and to join the Raelunds' motion to set aside default and default judgment. The Enzes objected to the motions. The District Court denied the motions and it is from this Order that the Raelunds and Weeks appeal.
STANDARD OF REVIEW
¶ 39 We review a district court's denial of a motion to set aside a default or a default judgment for a slight abuse of discretion. This standard requires the reviewing court to weigh the conflicting concerns of respecting the trial court's sound discretion while recognizing the policy favoring trial on the merits. Detienne v. Sandrock , 2017 MT 181, ¶ 22, 388 Mont. 179, 400 P.3d 682 (citation omitted).
¶ 40 A district court's determination regarding standing presents a question of law which we review de novo for correctness. Chipman v. Northwest Healthcare Corp. , 2012 MT 242, ¶ 16, 366 Mont. 450, 288 P.3d 193 (citations omitted).
¶ 41 We review a district court's denial of a motion to intervene as a matter of right under M. R. Civ. P. 24(a) de novo.
*682 Loftis v. Loftis , 2010 MT 49, ¶ 6, 355 Mont. 316, 227 P.3d 1030 (citation omitted).
¶ 42 We review a district court's award of damages for abuse of discretion. An abuse of discretion occurs if the district court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason. Detienne , ¶ 23 (citations omitted).
¶ 43 A district court's determination of damages is a factual finding which we will uphold unless it is clearly erroneous. A district court's determination of damages is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves us with a definite and firm conviction that the court made a mistake. When determining whether substantial evidence supports a district court's findings, we will review the evidence in the light most favorable to the prevailing party.
***417 Detienne , ¶ 24 (citation omitted).
DISCUSSION
¶ 44 1. Did the District Court slightly abuse its discretion when it denied the Raelunds' motions to set aside default and default judgment?
¶ 45 The Raelunds argue the District Court erred when it found "Antonius-Damascus; Raelund" was not "Anthony Raelund," the party in interest, and thus concluded he had no standing to pursue these motions to set aside. The Raelunds claim the District Court caused "confusion" by declaring the only issue to be determined at the May 1, 2017 hearing was the issue of possession, and this confusion caused "Antonius-Damascus; Raelund" to "respond[ ] with several different answers" each time the District Court asked him if he had signed the Lease or if he knew whether Weeks had signed the Lease. The Raelunds claim "Antonius-Damascus; Raelund" had "many documents in his possession" at the May 1, 2017 hearing which would have allowed him to prove his case.
¶ 46 The Raelunds further argue the District Court incorrectly applied the three factors a court must consider in deciding whether good cause exists to set aside a default, believing the factors to be conjunctive and considering only the first, instead of weighing all three. The Raelunds assert this alleged misapplication of the law is grounds for reversal.
¶ 47 The Enzes respond the Raelunds created their own problems by presenting one set of facts at hearing and an alternative set of facts in their subsequent motions, and thus the District Court did not abuse its discretion when it refused to set aside default and default judgment. The Enzes argue the District Court correctly determined that "Antonius-Damascus; Raelund" was not a party in interest, and thus not entitled to seek relief. M. R. Civ. P. 17(a)(1). The Enzes argue the inclusion of a party in interest is a threshold issue before a district court can rule upon the controversy, and lacking a party in interest here, the District Court had no basis to set aside a default or default judgment.
¶ 48 The Enzes further argue the District Court did not abuse its discretion in refusing to set aside the entry of default under M. R. Civ. P. 55(c) because the Raelunds failed to show good cause, nor the default judgment under M. R. Civ. P. 60(b) because the Raelunds have not met their burden of proof.
¶ 49 The District Court ruled that "Anthony Raelund" was not entitled to have default set aside under M. R. Civ. P. 55(c), nor default judgment set aside under M. R. Civ. P. 60(b). Taking into consideration the events of the May 1, 2017 hearing and the subsequent briefing, the ***418 court reaffirmed its decision that "Antonius-Damascus; Raelund" was not a party in interest. The District Court thus ruled that "Antonius-Damascus; Raelund" lacked standing to move the court to set aside the default and default judgment of "Anthony Raelund."
¶ 50 The question of standing addresses whether a litigant is entitled to have the court decide the merits of a particular dispute. Standing resolves the issue of whether the litigant is a proper party to seek adjudication of a particular issue. Chipman , ¶ 25 (citations omitted).
¶ 51 Here, the District Court concluded "Antonius-Damascus; Raelund" was not a *683 proper party to seek adjudication on the issue of the Enzes' Complaint, and further was not a proper party to seek to have the default and default judgment against "Anthony Raelund" set aside. At hearing, the District Court found the testimony of "Antonius-Damascus; Raelund" wholly incredible.
¶ 52 An assessment of testimony is best made upon observation of the witnesses' demeanor and consideration of other intangibles only evident during live testimony, and therefore, the fact-finder is uniquely in the best position to judge the witnesses' credibility. Thus, we defer to the trial court regarding the credibility of witnesses and the weight to be accorded their testimony. Ditton v. DOJ Motor Vehicle Div. , 2014 MT 54, ¶ 33, 374 Mont. 122, 319 P.3d 1268 (citations omitted). In this case, we defer to the District Court's assessment of the testimony at the May 1, 2017 hearing, including its determination that "Antonius-Damascus; Raelund" did not speak truthfully when he testified under oath that he signed the Lease or that he believed he signed the Lease even though he could not specifically remember doing so.
¶ 53 The District Court was also not impressed with the new explanation "Antonius-Damascus; Raelund" provided in his motions to set aside default and default judgment. Neither are we. The Raelunds do not explain why none of the "several different answers" "Antonius-Damascus; Raelund" offered at hearing included informing the District Court that Weeks signed the Lease as his son's representative. The Raelunds also do not explain why "Antonius-Damascus; Raelund," after denying any recollection of Weeks signing the Lease, remembered a month later that Weeks signed on his behalf. Nor have they explained why "Antonius-Damascus; Raelund" chose not to present evidence allegedly in his possession when the District Court offered him the opportunity to be heard prior to issuing its rulings.[4] We can only ***419 conclude that the Raelunds offer no explanations because no plausible explanations exist.
¶ 54 Since "Antonius-Damascus; Raelund" is not a party in interest, he has no standing to seek adjudication. We conclude the District Court committed no abuse of discretion when it denied his motions to set aside default and default judgment in this matter.
¶ 55 2. Did the District Court err when it denied Weeks' motion for leave to intervene?
¶ 56 On appeal, the Raelunds allege the District Court has put them in a no-win situation by concluding "Antonius-Damascus; Raelund" is not the real party in interest while also denying Weeks the opportunity to intervene. The Raelunds argue Weeks must be a party in interest if "Antonius-Damascus; Raelund" is not.
¶ 57 Weeks moved the District Court to intervene under M. R. Civ. P. 24(a)(2), which provides, upon timely motion, the court must permit anyone to intervene who claims an interest relating to the property which is the subject of the action, and is so situated that disposing of the action may impair or impede the movant's ability to protect his interest, unless the existing parties adequately represent that interest. To intervene as a matter of right under M. R. Civ. P. 24(a), the applicant must satisfy four criteria: (1) the application must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) the applicant must show that protection of his interest may be impaired by the disposition of the action; and (4) the applicant must show that his interest is not adequately represented by an existing party. Loftis , ¶ 9 (citations omitted).
¶ 58 Here, the District Court ruled that Weeks had failed to satisfy the second criteria. Since Weeks claimed to have signed the Lease only in a representative capacity, the court reasoned, Weeks was merely an agent and thus not a party in interest. We agree.
*684 ¶ 59 Both before the lower court and on appeal, the Raelunds maintain the person who appeared at the May 1, 2017 hearing and identified himself as "Antonius-Damascus; Raelund" is "Anthony Raelund and the real party in interest." The Raelunds contend Weeks signed the Lease "on behalf of his son, Anthony."[5] At hearing, the Raelunds had ***420 the opportunity to present this evidence, but did not do so. It was only after the District Court found "Antonius-Damascus; Raelund" wholly incredible in his assertion that he signed the Lease that the Raelunds offered a different story.
¶ 60 Regardless, if Weeks signed the Lease on behalf of another, he was merely acting as an agent and has no interest in the property. Thus, he is not entitled to intervene as a matter of right under M. R. Civ. P. 24(a).
¶ 61 Therefore, we conclude the District Court did not err when it denied Weeks' motion for leave to intervene.
¶ 62 3. Did the District Court err in its determination of damages?
¶ 63 Default judgment for damages must be justified by the pleadings, and the complaint must state a cause of action before a default judgment is justified. Even though the Raelands are subject to the District Court's order of default and default judgment, they have the right to be heard on the issue of damages. See Lindsey v. Keenan, Andrews & Allred , 118 Mont. 312, 320-21, 165 P.2d 804, 809 (1946) (citations omitted). Thus, even though we uphold the District Court's rulings on default and default judgment, we will consider the Raelunds' arguments on damages.
¶ 64 The Raelunds argue the District Court erred in its calculation of default damages. They allege the remedies of Title 70, Chapter 24 (the Landlord-Tenant Act), do not apply because they possessed the property under a contract of sale, which is exempted under § 70-24-104(2), MCA.
¶ 65 The Enzes disagree, arguing the Raelunds' option to purchase never ripened into a contract of sale and thus the Lease was merely a rental agreement with a future, unexercised option, subject to the provisions of the Landlord-Tenant Act. We agree.
¶ 66 The Landlord-Tenant Act does not apply to occupancy by a purchaser under a contract of sale, but does apply to the holder of an option to purchase. Commissioners' Comment to Section 1.202 of Uniform Act, § 70-24-104, MCA. "There is a decided distinction between an option to purchase, which may be exercised or not by the prospective purchaser, and an absolute contract of sale, wherein one of the parties agrees to sell and the other to buy certain property, the sale to be completed within an agreed time." Clark v. Amer. Dev. & Mining Co. , 28 Mont. 468, 479, 72 P. 978, 981 (1903) (citations omitted).
¶ 67 Whether a writing transferring an interest in real estate is a ***421 contract of sale or an option to purchase depends not only on particular words and phrases, but also on the parties' intention to be derived from the instrument itself by consideration of its parts, and when that is doubtful, by the circumstances attending it. Pollard v. Bozeman , 228 Mont. 176, 180, 741 P.2d 776, 779 (1987) (citations omitted). An option to purchase is not a sale or even an agreement for a sale; it is a right of election to exercise a privilege, and only when the privilege has been exercised does a contract of sale exist. Pollard , 228 Mont. at 180, 741 P.2d at 779 (citations omitted).
¶ 68 Liquidated damages clauses generally contribute to the conclusion that an agreement is a lease with an option to purchase if the clause provides consideration for an option where the instrument does not affirmatively obligate the prospective purchaser to purchase the property. Pollard , 228 Mont. at 180-81, 741 P.2d at 779 (citation omitted). Here, the Lease contained a liquidated damages clause, allowing the Enzes to retain monies paid if the Raelunds defaulted on the agreement. Although the Lease gave the *685 Raelunds the right to purchase the Kila property, it did not obligate them to do so.
¶ 69 In Pollard , we determined that an ambiguous real estate agreement was a contract of sale where, at the conclusion of the leased term, the tenant could purchase the property for the nominal consideration of $10.00. We noted that the "lease" required the lessee to pay as compensation for the lease "a sum substantially equivalent to or in excess of its value" after which, for nominal consideration, it would own the property. Pollard , 228 Mont. at 181-82, 741 P.2d at 779-80. Here, at the end of the Lease, the Raelunds would not own the property for nominal additional consideration, but rather would either owe an additional $239,900, or assume the existing mortgages.
¶ 70 We conclude the Lease is an option to purchase and not a contract of sale, and subject to the remedies of the Landlord-Tenant Act. Therefore, the District Court did not err in its determination of damages, and we uphold its ruling.
CONCLUSION
¶ 71 We conclude the District Court: did not slightly abuse its discretion when it denied the Raelunds' motions to set aside default and default judgment; did not err when it denied Weeks' motion to intervene; and did not err in its determination of damages.
¶ 72 Affirmed.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
JAMES JEREMIAH SHEA, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.

On May 8, 2017, the District Court ordered this motion stricken and, except for the first page, the document was removed from the District Court file.

The District Court ordered this motion stricken and, except for the first page, the document was removed from the District Court file.

Throughout the hearing transcript, "Candice" is sometimes spelled "Candace" and "Raelund" is alternately spelled "Raelund" and "Raeland." We have tried to remain consistent with the District Court record in this Opinion.

Moreover, although the Raelunds tell this Court that "Antonius-Damascus; Raelund" came to the May 1, 2017 hearing with the understanding that the District Court intended only to address the issue of possession, the record demonstrates otherwise. As noted in the findings above, the District Court had to correct his mistaken belief that, "[t]he subject matter today is to see if I'm a party of interest."

We recognize that "Antonius-Damascus; Raelund" testified that Weeks was not his father, but rather his step-father. The Raelunds have offered no explanation as to why Weeks and "Antonius-Damascus; Raelund" later filed affidavits swearing they were father and son.